SNOW MACHINES, INCORPORATED

v.

HEDCO, INC. and the Dewey Electronics Corporation.

Appeal of FRIEDMAN AND KAPLAN.

No. 87–5516.

United States Court of Appeals, Third Circuit.

Submitted Dec. 16, 1987.

Decided Feb. 9, 1988.

---

Friedman and Kaplan, New York City, pro se.

Before GIBBONS, Chief Judge, SLOVITER and COWEN, Circuit Judges.

### OPINION OF THE COURT

GIBBONS, Chief Judge:

█ In this case we must determine whether the district court acted properly, under Fed.R.Civ.P. 11, when it ordered an attorney to pay a sanction of $1500 to the court for submitting a proposed form of order to a magistrate. The district court concluded that the submission misrepresented the magistrate's decision, even though the magistrate signed the proposed order. We hold that, at least in the absence of extraordinary circumstances not present here, the submission of a proposed order which is actually signed by one judge can-

not be considered objectively unreasonable by another. Therefore, we will reverse.

I

Snow Machines, Inc. and Hedco, Inc., a division of the Dewey Electronics Corporation, are competitors in the manufacture of snowmaking equipment. In May of 1985, Hedco distributed a circular at a trade show discussing patent litigation between it and Snow Machines. In July of 1985, Snow Machines instituted this action, alleging that the circular was defamatory. It also claimed various business torts.

This case was litigated vigorously, if not bitterly. The aspect of the battle that concerns us here is Hedco's discovery request for evidence of causation and special damages, necessary elements of plaintiff's non-libel claims. In particular, Hedco asked for information concerning those customers which Snow Machines claimed failed to do business with it because of the circular (Interrogatory 5) and asked for the basis of Snow Machines' contention that Hedco's conduct "reduced the volume of [Snow Machines'] business" (Interrogatory 6). (A. 61–63). Snow Machines failed to supply any detailed information, responding to Hedco's interrogatories as follows:

5. The specific details requested by defendant are unknown by plaintiff at this time, however plaintiff's sales are down compared to one year ago, before the Circular was distributed.

6. While the exact figures are confidential, plaintiff's sales for year to date, January 1985, were down approximately $600,000. Plaintiff expects the publication of the Circular to influence future sales as well.

(A. 82). On April 23, 1986, in response to a motion to compel more specific answers, Magistrate Serena Perretti, finding these answers "totally unresponsive," ordered that questions 5 and 6 be answered "in full and complete detail within 10 days," (A. 130). The supplementary response to question 6 reads in its entirety:

Preliminary figures just computed by [Snow Machines'] accountants place [its]

gross sales for 1985 down approximately $400,000 from the previous year. (A. 399).

On May 20, 1986, Magistrate Perretti conducted a conference to deal with various discovery disputes and scheduling matters. *See* Fed.R.Civ.P. 16. She took the unusual step of conducting the conference in open court and recording it. She opened the conference as follows:

> All right, madam and gentlemen, I asked you to come into the Courtroom rather than the library so that there would be no mistake about who says what today, and I can start off, knowing that this is on record—please be seated—and let you know that I am extremely troubled, No. 1, about the extraordinary exchange of correspondence that I have been getting here. I cannot keep up with it. There are responses, some responses I've received to adversary's letters even before I've received adversary's letters. That's how quick this has been being exchanged. That's No. 1, I simply can't keep up with it and I have got the impression from it that there is a problem.
>
> No. 2, I'm quite aware of the fact that there was other litigation, that there is other litigation as well. I can draw an inference that the parties who have been involved in this litigation over the course of so many years—it certainly must be close to ten—may have developed somewhat of an antipathy toward each other. I would certainly hope that counsel, being professional persons, are not letting what might be a reasonable antipathy on the part of clients rub off on them, but I fear that maybe that's happening in this case and that's why I'm having this on the record and why I am starting it off by freely saying, noting that I am being recorded, what I have in my mind. And maybe if you folks say what you have in your minds we can get this show on the road.
>
> I've entered orders in this case, my orders have been ignored, my time limits have been expanded, my expanded time limits have been ignored. You know, I'm just here to try to get you people to the point where you can best serve your clients by bringing this case to resolution, and if you're not going to abide by my orders, well I guess we'll have to take steps.

(A. 138–39).

Magistrate Perretti persistently questioned counsel for Snow Machines:

> THE COURT: Do you take the position that you've given them fully responsive answers to all of their questions?
>
> [COUNSEL]: I take the position that we have
>
> .    .    .    .    .
>
> responded to their questions to the best of our ability.
>
> THE COURT: Is there anything else?
>
> [COUNSEL]: Apparently not, unless—
>
> THE COURT: No. Is there anything else? Not "apparently not," not to the best of your ability. Have you given them all that there is?
>
> [COUNSEL]: Yes, your Honor.
>
> THE COURT: In other words you have given them your case. You have told them your case.
>
> [COUNSEL]: Yes, your Honor.
>
> THE COURT: Whatever it is that will be produced in this case in support of your client's position has already been revealed.
>
> [COUNSEL]: Yes, your Honor.
>
> THE COURT: Nothing more.
>
> [COUNSEL]: Yes, your Honor.

(A. 147–48). Attention turned specifically to the supplemented answer to interrogatory 6, indicating that sales were down approximately $400,000. Magistrate Perretti stated with regard to that answer:

> All right, you still haven't got anything about cause and ... you've been told everything that they intend to tell the trial court and, therefore, without being able to establish the cause ... they can't get the amount in, can they? Therefore it seems to me that you've won....

(A. 149). A short time later, the magistrate commented:

> But at this point in time you're never going to get to amount, ... because

there has been no causal relationship revealed in the discovery.

.    .    .    .    .

You got what you wanted for your motion for summary judgment.

(A. 153). Counsel for Hedco requested "an order that precludes them from putting evidence on as to the cause with respect to either a summary judgment or a trial." Magistrate Perretti responded, "I will issue a preclusionary order limiting them to their discovery produced." (A. 154–55).

This, however, was neither the end of the conference nor the end of the discussion concerning interrogatory 6. As the conference continued, counsel for Snow Machines explained that "the sales information that they are requesting is forcing our client literally to decide whether or not to proceed with the suit.... We are willing to take the risk that we can't establish the damages." (A. 156). He further explained, "We brought [the suit] for libel. I understand that there are other torts. If those torts fail at summary motion, they fail. But if we win on libel and we're awarded a dollar, as far as we're concerned that's a victory." (A. 156). Tempers apparently flared as counsel interrupted each other. The magistrate interjected, "Hey, both of you, please." "You'll be here when this case is long gone. You won't even be able to remember the name of your client, believe me, and you'll still be here." (A. 157). Counsel for Hedco apologized. The following colloquy ensued:

[COUNSEL FOR HEDCO]: But the point—if, if what [counsel for Snow Machines] is telling me is that they recognize—and I know he's going to say, "I don't recognize that we haven't produced damages," but he does recognize.

THE COURT: That's what he said.

[COUNSEL FOR HEDCO]: Should we be forced to even make a motion for summary judgment to get these claims out of the suit? There's been no discovery, they admit. We'll also move, and I may add we will move—

[COUNSEL FOR SNOW MACHINES]: We didn't admit that.

[COUNSEL FOR HEDCO]:—for rule 11 sanctions because there's been no basis for this law suit.... So if what he's saying at this point is an [in?] order to avoid discovery, he'll, he'll recognize that there's no merits and they have no basis to substantiate those claims, those claims should be dismissed.

[COUNSEL FOR SNOW MACHINES]: I didn't say that, your Honor.

THE COURT: Ma'am, he not only—

[COUNSEL FOR SNOW MACHINES]: I didn't say that, your Honor. I mean that's a misstatement.

THE COURT: He not only does not want to give discovery, he seems willing to take a known risk of losing. And I can't compel him to do anything else. It's like a personal injury claim, if you will. Plaintiff was knocked down while a pedestrian in the crosswalk. Everybody saw her knocked to the ground. She refuses to go to a doctor of the defendant's cho[o]sing. Okay? For reasons of her own.

[COUNSEL FOR HEDCO]: I understand, your Honor. I will drop the point.

THE COURT: And I can't do anything more than say: Yes, you must do it or else. And that's what I'm willing to do here—yes, you must do it or else. The "or else" is a preclusionary order and I will enter a preclusionary order as a sanction, if you will, for their inadequate discovery. I'[m] perfectly willing to do that. Whether it's a sanction for inadequate discovery, whether it's a pre-trial device to limit the issues for trial, I'm perfectly willing to do it, and that should get the show on the road.

(A. 158–59). As the conference was drawing to a close, the magistrate summed up:

And frankly I think that you already got this case. I think you've all got what each other has to give. I think you're at the point that you both determined that you're going to trial on the basis of the following facts—not conclusions but facts. We'll see them in a pre-trial order. You'll be limited to them. You'll be limited to what has been divulged in discovery. You make your pretrial—you

make your motion for summary judgment based on those facts. If there are disputed facts for resolution, you're going to trial but you're going to trial on those facts and on those facts alone. Okay? Everybody knows that. That's the grounds rules.

[COUNSEL FOR HEDCO]: We agree to that, your Honor.

(A. 174). Counsel for Snow Machines sought clarification, stating, "I ... understand from what you just said that I don't have to produce [the confidential information] because I'm precluded from using it[.]" The magistrate replied, "From using it, yes." (A. 174).

Counsel for Snow Machines then requested a few days so that his client could make a final decision whether to turn over the information. Magistrate Perretti granted the request, noting:

You're going to have to do it. I mean it's obvious you're going to have to do it. Your—to be very informal, you're going to have to put up or shut up. And it's important enough so that you can take that time to explain to your client in those graphic terms, knowing that there will be a preclusionary order entered.

(A. 177–78).

Snow Machines did not produce the discovery, and on May 28, 1986, counsel for Hedco submitted a letter and proposed order. The text of the letter provides in full:

At the conference on May 21, Your Honor made clear that a preclusion order would be entered unless [Snow Machines] produced, on or before May 26, any evidence it believes it has that Dewey's conduct caused harm to [Snow Machines]. No such information has been produced.

Accordingly, we respectfully request the entry of the enclosed form of order.

(A. 189). The operative language of the proposed order states:

Plaintiff having failed to produce any evidence that defendants' conduct caused harm to plaintiff's business;

IT IS HEREBY ORDERED that plaintiff is precluded from producing any evidence with respect to its claim that defendants' conduct caused harm to plaintiff's business.

(A. 191). The record does not reflect when Magistrate Perretti received this correspondence.

On May 29, counsel for Snow Machines wrote to the magistrate objecting to the proposed order submitted by counsel for Hedco. The letter stated:

Plaintiff has determined that the potential damage caused by producing any of its confidential and hig[h]ly sensitive financial information to its arch co[m]petitor, without the benefit of a protective Order, jeopardizes the very existence of the Company and thus this information cannot be produced. As a result plaintiff is prepared to accept the consequences of a preclusion Order by Your Honor as outlined at the May 21st conference, wherein Your Honor stated:

"I will issue a preclusionary order limiting them to their discovery produced" (p. 18, lines 3–4 of the transcript).

(A. 193). Counsel requested that the magistrate enter the accompanying form of order, which provided:

The parties having appeared before this Court on May 21, 1986 and plaintiff having been directed to produce, on or before May 26, 1986, any further material responsive to Interrogatory No. 6:

IT IS HEREBY ORDERED that plaintiff is precluded from using at trial any information not produced in discovery on or before May 26, 1986.

(A. 195). This correspondence was apparently sent by Federal Express, but the record does not disclose when the magistrate received it.[1]

On May 30, 1986, Magistrate Perretti signed the form of order submitted by Hedco. She made no notation on the order indicating that she had considered objections to the form of the order. The Clerk

---

**1.** The parties have stipulated to its inclusion in the record. Therefore, even though it is not stamped "received" by Magistrate Perretti, we assume that she received it in the normal course.

filed the order at 4:02 pm on May 30, 1986. It was entered on the docket on June 2, 1986.

On June 9, 1986, Snow Machines appealed to the district judge from the preclusion order. On June 17, 1986, Hedco moved for summary judgment and for Rule 11 sanctions. On June 30, 1986 Snow Machines cross-moved for summary judgment on the libel claim and for Rule 11 sanctions. Although both parties' motions were originally returnable on July 17, 1986, they were repeatedly adjourned and not heard until February 9, 1987. Approximately one month before the motions were heard, on January 6, 1987, Magistrate Perretti resigned as United States Magistrate to become a judge of the New Jersey Superior Court.

The district judge delivered his decision in open court in the presence of counsel on a regularly scheduled motion day.[2] On the appeal, he held that the order submitted by Hedco and signed by the magistrate was a "clearly erroneous embodiment" of the magistrate's oral decision while the order submitted by Snow Machines did embody that oral decision. Alternatively, the district judge concluded that the order that was entered was a "clearly excessive sanction for plaintiff's failure to produce the requested sales evidence." Accordingly, the district judge modified the magistrate's order to conform to the proposed order submitted by Snow Machines. (A. 268).

The victory for Snow Machines was short-lived. The district judge agreed with Magistrate Perretti that the evidence which Snow Machines had produced was insufficient to carry the issue of causation to the jury and therefore granted Hedco's motion for summary judgment on the non-libel claims. (A. 282–85). Naturally, the cross-motion for summary judgment was denied. The district judge also granted summary judgment for Hedco on Snow Machines' libel claim, holding that the challenged statements were expressions of opinion and therefore not actionable.[3]

Turning to the issue of sanctions, the district judge concluded that at least once Snow Machines decided not to produce the information regarding causation which the magistrate had ordered, it had no reasonable basis for pursuing its non-libel claims.[4]

The district judge also concluded that it was unreasonable for Hedco's counsel to submit the proposed order which she did, concluding from the transcript of the conference before Magistrate Perretti that the magistrate had "rejected defendants' express request for an order precluding plaintiff from introducing evidence of causation, opting instead for an order limiting plaintiff to discovery materials produced by a set cutoff date." (A. 302). He viewed the signature on the letter of transmittal sufficient to bring Rule 11 into play. (A. 303).

The district judge reprimanded counsel for plaintiff and counsel for defendants. Since he viewed each side's transgressions as roughly equal, he imposed a sanction of $1500 on counsel for each side, payable to the court. The individual lawyers or their firms, not the clients, were directed to pay the sanction. (A. 305).

Both sides sought reconsideration of the sanctions decision. On reconsideration, the district judge adhered to his earlier decision. He evaluated in detail possible arguments for the extension of law that could be made in support of plaintiff's non-libel

---

2. Thus it is likely that other attorneys were in attendance for the announcement of the sanctions. An oral opinion was read into the record later that day. (A. 263).

3. In a separate appeal, Snow Machines appealed the summary judgment as to the libel claim. This court affirmed in an unpublished memorandum opinion. No. 87–5252, December 16, 1987.

4. This conclusion demonstrates the irony of sanctioning counsel for Hedco. The only difference between the competing proposed orders was that the Snow Machines order left it to the district judge to decide whether the evidence produced was sufficient on the issue of causation while the Hedco order (assuming it was upheld on appeal) would have foreclosed the causation issue. In sanctioning counsel for Snow Machines, the district judge not only agreed with the magistrate's view of the sufficiency of the evidence, but also concluded that no reasonable lawyer could hold a different view of that evidence.

claims, and concluded that none of them had in fact been made by the plaintiffs. (A. 315–19). He also rejected the arguments that counsel lacked adequate notice and opportunity to be heard, and that the sanction was excessive. The district judge, however, in response to a request that the names of the plaintiff's attorneys be omitted from the opinion imposing sanctions before publication, stated that he did not intend to publish the underlying opinion.[5] (A. 322).

With regard to the sanctions imposed on counsel for Hedco, the court rejected various arguments tending to show that the proposed order submitted was a reasonable response to the discovery dispute. The district judge reasoned:

> It is irrelevant ... that [Hedco's proposed order] may have presented a reasonable approach to plaintiff's intransigence in discovery, or a better approach than the Magistrate adopted, or indeed the best approach possible given the plaintiff's behavior. [Counsel for Hedco] made her argument on May 21 and lost. The proposed order she submitted should not have continued the argument. The submission should have done no more than embody the Magistrate's decision of May 21. Its reasonableness as a submission to the court depended wholly on how well it embodied that decision. Its reasonableness depended in no degree on how well it embodied the spirit of Fed.R. Civ.P. 37, how wisely it regulated the relations among the parties, or how reasonable it would have appeared in the first instance to some other judge of the matter, or [counsel for Hedco] herself.

(A. 329). He also viewed any inadequacy in the notice provided to counsel for Hedco as cured by the proceedings on the motion for reconsideration. Lastly, he rejected the contention that Rule 11 does not apply to proposed orders. He noted that proposed orders are literally "papers" and held that the attorney's signature on the cover letter constitutes a representation regarding the content of the proposed order. Acknowledging that the submission of a proposed

order is less a document of advocacy and more a document based on the trust of the court and/or the courtesy of the attorney, he concluded, "I cannot fail to find that once the trust is assumed or the courtesy extended, the submission must be carried out in a reasonable manner." (A. 332–33).

The order on the motion for reconsideration was entered on July 8, 1987. This appeal followed.

## II

The court has said that on review of a district court's imposition of Rule 11 sanctions, "the question is not whether the reviewing court would have applied the sanction, but whether the district court abused its discretion in doing so." *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir.1985) (citations omitted); *see also Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir.1987); *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 64 (3d Cir.1986); *Dreis & Krump Mfg. v. Int'l Ass'n of Machinists*, 802 F.2d 247, 255 (7th Cir.1986); *Stevens v. Lawyers Mut. Liab. Ins. Co. of N.C.*, 789 F.2d 1056, 1059 (4th Cir.1986). As the Court of Appeals for the Ninth Circuit pointed out, however:

> Appellate review of orders imposing sanctions under Rule 11 may require a number of separate inquiries. If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determination of the district court under a clearly erroneous standard. If the legal conclusions of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion *de novo*. Finally, if the appropriateness of the sanction imposed is challenged, we review under an abuse of discretion standard.

*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986); *see also Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (in banc); *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1126 (5th Cir.1987); *Westmoreland v. CBS*, 770 F.2d

---

**5.** Accordingly, this opinion does not mention them by name.

1168, 1174–75 (D.C.Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985). This court has noted that the "tone of the rule [as amended in 1983] makes clear that although trial judges still retain substantial discretion, its exercise is now directed more to the nature and extent of sanctions than to initial imposition." *Lieb v. Topstone Industries,* 788 F.2d 151, 157 (3d Cir.1986).

There is no need in this case, however, to refine this court's doctrine concerning the standard of review applicable to Rule 11 sanctions. It is well established that this court exercises plenary review concerning the legal standards applied by the district court in exercising its discretion. *See Delaware Valley Citizens' Council v. Pennsylvania,* 762 F.2d 272, 280 (3d Cir.1985), *rev'd on other grounds,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) and ——— U.S. ———, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). Undertaking that plenary review, we conclude that the district court failed to apply the correct legal standards.

### III

The appellant does not challenge the propriety of that aspect of the district court's order directing that payment be made to the court, rather than to the plaintiff. Various courts have stated that such financial penalties are permissible under Rule 11. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987) (in banc); *In re Curl,* 803 F.2d 1004, 1007 (9th Cir.1986); *Cotner v. Hopkins,* 795 F.2d 900 (10th Cir.1986); *Hilgeford v. Peoples Bank,* 776 F.2d 176 (7th Cir.1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 188 (1986); *see also Eastway Construction Corp. v. City of New York,* 821 F.2d 121, 125–26 (2d Cir.) (Pratt, J., dissenting), *cert. denied,* ——— U.S. ———, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). As the Court of Appeals for the Eleventh Circuit explained:

> The imposition of a monetary sanction is a particularly reasonable use of a court's discretion under Rule 11. The everyday meaning of "appropriate sanction" encompasses a monetary sanction. Imposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits. When imposed upon a lawyer, a financial penalty forces the lawyer rather than the client to bear the costs of violations of the rule. Monetary sanctions may be the most effective way to deter a powerful and wealthy party from bringing frivolous or vexatious litigation.

*Donaldson,* 819 F.2d at 1557. Such a sanction recognizes that deterrence of improper behavior, not simply compensation of the adversary, is a goal of Rule 11. As the Advisory Committee stated in its Notes, "The word 'sanctions' in the caption ... stresses a deterrent orientation...."

Courts have grappled with the procedural protections necessary before imposing what is, at bottom, simply a fine. In *Eash v. Riggins Trucking,* 757 F.2d 557 (3d Cir. 1985) (in banc) we held that a district court must afford notice and "some occasion to respond" before exercising its inherent power to impose a modest monetary sanction on an attorney. *Id.* at 570. More significant protections may be appropriate under Rule 11, since the rule authorizes sanctions which no one would seriously describe as "modest." *See Donaldson v. Clark,* 786 F.2d 1570, 1577 ("where an attorney is fined as punishment[,] the court imposing the fine must follow the procedures as required in criminal contempt proceedings"), *vacated,* 794 F.2d 572 (11th Cir. 1986), *on rehearing,* 819 F.2d 1551 (1987) (in banc) (contempt proceedings not required; flexible standard depending on the nature of the infraction and the type and severity of the contemplated sanction); *see also Cotner v. Hopkins,* 795 F.2d 900, 903 (10th Cir.1986) (citing the panel decision in *Donaldson* and holding "contempt procedural protections are indicated here where the fine was precipitated, in part, by plaintiff's failure to comply with a previous court order"). We need not decide this issue, since appellant makes no due process argument in this court.

We note, however, a difficulty which the procedure followed by the district court creates on appeal: there is no appellee. This problem would be avoided if contempt

procedures were used, since the United States Attorney or a disinterested private attorney—but not counsel for an interested party—would be appointed to prosecute the contempt and/or defend the district court's judgment. *See Young v. United States ex rel. Vuitton et Fils,* —— U.S. ——, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). This aspect of the contempt process, however, merely underlines how severely the hope of the Advisory Committee that "the efficiencies achieved through more effective operation of the pleading regimen ... not be offset by the cost of satellite litigation over the imposition of sanctions" would be dashed by requiring the use of contempt procedures.

▮ Short of relying on or analogizing to contempt procedures and appointing counsel to defend the district court's ruling—a step we have not taken—we are left in an uncomfortable position.[6] We must play not only our accustomed and proper role of neutral adjudicator, but also (albeit temporarily) the role of adversary to the appellant in order to test the assertions made on appeal. Our role is further complicated by the institutional association we share with the appellant's "adversary" in fact: the district judge.[7] We are surprised that this problem has attracted no attention. We offer no solutions to it, but simply note its existence.

We also have no occasion to decide whether Rule 11 applies to proposed orders, since appellant does not pursue this contention on appeal. We observe, however, that there are substantial reasons to believe that it does not.

Rule 11 provides, "Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name...." The Rule goes on to define the implications of an attorney's signature on such a document, and further provides, "If a pleading, motion, or other paper is not signed, it shall be stricken unless signed promptly after the omission is called to the attention of the pleader or movant." A proposed order, however, is not signed by the submitting party.[8] Instead, it is submitted in blank for the *court's* signature. It is difficult to imagine that a proposed order would ever be "stricken"—whatever that would mean—if submitted unsigned, or that anyone would consider calling such an "omission" to the attention of the submitter. It was only by seizing on the signature on the letter of transmittal that the district court sidestepped this difficulty. Although it might have been rude to submit a proposed order without a signed letter of transmittal—and ruder still to submit a proposed order without a letter of transmittal at all—it does not appear that Rule 11 would have led anyone to believe that the proposed order should not be considered in such circumstances.[9]

---

**6.** In an unusual case which presents a legal issue of particular interest to the court, we could also, as we did in *Eash,* appoint an amicus to assert a position adverse to that of the appellants. 757 F.2d at 559 n. 1.

**7.** Thus the situation we face is the converse of the typical mandamus proceeding. In the typical mandamus proceeding, although the district judge is the nominal respondent, there is a litigant who stands as a true adversary of the petitioner. *See, e.g., Cipollone v. Liggett Group, Inc.,* 822 F.2d 335 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987); *see generally Rapp v. Van Dusen,* 350 F.2d 806 (3d Cir.1965). In this case, there is no appellee, and the district judge is the closest thing to an adversary that the appellee has.

**8.** The only exception is when counsel signs a proposed order simply to demonstrate consent to its form and/or entry.

**9.** We do not intimate a view whether only the person who actually signs a document to which Rule 11 clearly applies, as opposed to the person or persons who were responsible for its content, is susceptible to sanctions. *Compare In re Ruben,* 825 F.2d 977, 984 (6th Cir.), *petition for cert. filed,* No. 87–735, 56 U.S.L.W. 3368 (filed Oct. 27, 1987) and *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1129 (5th Cir.1987) (only signer may be sanctioned) *with Alcan Alum. Corp. v. Lyntel Products, Inc.,* 656 F.Supp. 1138, 1140 n. 4 (N.D.Ill.1987) and *Itel Containers Int'l v. Puerto Rico Marine Mgt.,* 108 F.R.D. 96, 103 (D.N.J.1985) (non-signer may be sanctioned); *see also Gaiardo,* 835 F.2d at 484–85 ("Rule 11 sanctions are improper in situations which do not involve signing a paper"); *see generally* Schwarzer, Sanctions Under the New Rule 11–A Closer Look, 104 F.R.D. 181, 186 (1985).

Moreover, neither of the two categories of proposed orders, unlike the documents with which Rule 11 is explicitly concerned, are typical advocacy documents. The first category of proposed orders consists of those that accompany motions, serving not only to facilitate the memorializing of the decision if the motion is granted, but also to make clear both to the court and the other parties precisely what relief is sought. Indeed, some district courts require by local rule that all motions be accompanied by proposed orders of this type. D.N.J. Rule 12(C); E.D.Pa. Rule 20(a); M.D.Pa. Rule 401.1; W.D.Pa. Rule 4(a)(2). Such a proposed order has no life of its own independent of the motion which requests its entry. The second type of proposed order is one submitted after a court has rendered a decision; the proposed order is supposed to merely memorialize that decision. It is used simply to reduce the clerical work of the court. Ideally, it is a document whose substance is the same whether physically prepared by the winning party, the losing party, or the court.

Even assuming, however, that Rule 11 applies to proposed orders, the sanction imposed by the district court cannot stand. "The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances...." *Eavenson,* 775 F.2d at 540. Central to the district court's conclusion that appellant lacked a reasonable basis for submitting the proposed order was the interpretation of the magistrate's signing of the proposed order as "an unintentional error." (A. 312). The district judge apparently thought that the magistrate's "guard against partisan representation might have been down." (A. 334). While this is possible, it seems unlikely that the same magistrate who only the week before took the precaution of tape recording a conference in this case and reminded counsel at that conference of their professional obligations, would unquestioningly accept a proffered order.

The district judge also minimized the extent to which a court's decision (particularly an oral one) may not be viewed in exactly the same way by adversaries or may not address all the details that should be addressed.[10] This seems to be precisely why the local rules of the District of New Jersey afford an opportunity to the non-drafter of a proposed order to object to the submitted form of order. *See* D.N.J. Rule 12(C). When such disputes occur, the court is really being called upon to clarify or refine its ruling. Thus the resulting order, after such clarification or refinement, may well be different from the statements made from the bench. This seems especially likely where a judge conducts a conference, rather than simply hears argument and then renders a decision.

Most fundamentally, however, apart perhaps from the correction of the most obvious formal errors or in some extraordinary circumstances, it is simply improper for one judge to rely on a transcript to conclude that another judge did not intend to order what she in fact ordered. There is wide authority for the proposition that where a court makes formal findings of fact, they control over any statement from the bench. *E.g., E.E.O.C. v. Exxon Shipping Co.,* 745 F.2d 967, 974 (5th Cir. 1984); *see generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2580 (1971) (citing cases). This same principle dictates that a formal order controls over a prior oral statement. The operative act of the judge is the order. Even a formal published opinion, to say nothing of a bench opinion and even less of a comment at a conference, is a statement of reasons for the order; it does not supplant the order.

Recognizing a power in one judge to conclude that another judge did not intend to do what she in fact did is fraught with danger. It opens a gaping hole in the carefully constructed legal principles governing standards of appellate review. A

---

10. In particularly complex or contentious circumstances, some judges conclude an oral ruling by instructing counsel not to leave the courthouse until they agree on the form of order, noting that if they cannot agree, they should return to the courtroom so that the judge can fix the form of order immediately.

district judge may only set aside an order of a magistrate concerning a nondispositive matter where the order has been shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); *see Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1120 (3d Cir.1986). If the district court may simply conclude that the magistrate did not really intend to enter the order which she did, this limitation on the reviewing power is illusory. The same is true of review by the court of appeals of orders rendered by the district court.

Even if the power could be cabined within tolerable limits, a decision that another judge inadvertently signed an order is highly disrespectful. Surely it is true that judges occasionally sign orders due to inadvertence. But a decent respect for fellow judges requires that, at least absent the most extreme circumstances, correction of such errors be left to the inadvertent judge and the normal appellate processes. In this case, counsel for the plaintiff submitted objections to the form of order, an alternative proposed order, and a transcript of the May 21, 1986 conference. Even if Magistrate Perretti had signed the proposed order submitted by appellant due to inadvertence, we must assume that the plaintiff's objections would have led her to vacate her earlier order if it did not represent her considered views. Perhaps if she had left the federal bench shortly after signing the order there might be reason to believe that she lacked an adequate opportunity to notice and correct her inadvertence. However, seven months passed between the time she signed the order and when she left the federal bench.[11] Thus while if it were this court's role—or the district court's role—to determine the most appropriate interpretation of the transcript of May 21, 1986, we might agree with or defer to the district court's reading, we see

no justification for the district court's decision to use that transcript to contradict the magistrate's order.

In light of this conclusion, it is clear that the order directing the payment of sanctions must be reversed. If the order signed by the magistrate is considered her own deliberate decision, as we conclude it must, then submission of the proposed order which was signed obviously cannot be viewed as an "objectively unreasonable" embodiment of the magistrate's decision.[12]

We also must comment on a major source of the difficulty in this case. If the district judge had heard the appeal within five months of the date on which it was originally scheduled, there would have been plenty of time for the district court to determine directly from the magistrate whether she in fact had intended to sign the order or had done so inadvertently. It was the delay in hearing the appeal that resulted in the magistrate leaving the federal bench before the appeal was heard. The reasons for this delay are not clear from the record. We are aware of the value of accommodating reasonable requests for adjournments, and the burdens placed on district judges with heavy caseloads. Nevertheless, we must exhort district judges to move as expeditiously as possible, and to be sensitive to the difficulties which delay creates for litigants and attorneys. Even apart from the other issues addressed in this opinion, we would have hoped that where such delay made a determinative resolution of the question of the magistrate's intent impossible, the district court would have been reluctant to impose as heavy a sanction as it did in this case.

■ We will reverse the order of the district court requiring appellant to pay $1500 to the court. Since there is no appel-

---

**11.** It is true that for almost all of this time the order was on appeal to the district judge. While by analogy to Fed.R.Civ.P. 60(a) a magistrate might determine that she needed leave of the district court before actually vacating her order, we cannot assume that a United States Magistrate, well aware of the volume of work in the district court, would simply stand by and let an

appeal be litigated concerning an order which she had signed and filed by accident.

**12.** We intimate no views on the standards or procedures which govern the situation where the same judge who rendered an oral decision desires to sanction counsel for submitting a proposed order inconsistent with that oral decision.

lee, there can be no recovery of costs. For the same reason, there is no one to seek further review of this decision. Accordingly, the mandate may issue immediately.