GILLETTE FOODS INCORP.

v.

BAYERNWALD–FRUCHTEVERWER-
TUNG, GmbH and Ocean Spray
Cranberries, Inc.

Carmine J. Liotta, Appellant.

No. 91–5775.

United States Court of Appeals,
Third Circuit.

Argued June 22, 1992.

Decided Oct. 15, 1992.

H. Robert Fiebach (argued), Andrew A. Chirls, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for appellant.

Richard E. Grimm (argued), Freeman, Wasserman & Schneider, New York City, for appellees.

Present: BECKER, HUTCHINSON and ALITO, Circuit Judges.

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Carmine J. Liotta, Esquire (Liotta) appeals an order of the United States District Court for the District of New Jersey impos-

ing sanctions on him for his actions in this case as counsel for Gilette Foods Incorporated (Gilette).[1] The district court reprimanded Liotta under its inherent power even though it had previously decided not to impose sanctions against Liotta under Federal Rule of Civil Procedure 11 for bringing the claim at issue. Liotta contends that the district court erred in sanctioning him because its finding of bad faith was clearly erroneous, he was not given sufficient notice that he might be sanctioned, the motion for sanctions was not timely and because the district court's finding of bad faith, a necessary prerequisite to the use of inherent power, was in irreconcilable conflict with its earlier ruling that the questionable claim he presented for his client met Federal Rule 11's objectively reasonable standard. Under the circumstances of this case, we hold that the district court's finding of bad faith was clearly erroneous. Accordingly, we will reverse the district court's order imposing sanctions on Liotta.[2]

## I.

Gilette Foods, Incorporated (Gilette), represented by Liotta, brought an action in the Superior Court of New Jersey, Chancery Division against Bayernwald–Fruchteverwertung, GmbH (Bayernwald) and Ocean Spray Cranberries, Incorporated (Ocean Spray). Bayernwald and Ocean Spray removed the case to the United States District Court for the District of New Jersey in April of 1987. The complaint sought injunctive relief and damages, claiming that Bayernwald breached an exclusive sales contract under which Gilette would be Bayernwald's sole United States distributor of an elderberry extract known as "Sambucus–N" or "Rubini." Gilette also sought relief against Ocean Spray on a claim of tortious interference with the alleged contract between Gilette and Bayernwald.[3]

Bayernwald and Ocean Spray first moved for summary judgment on the breach of contract claim in October of 1987. Although Gilette brought its contract claim against Bayernwald, Ocean Spray joined the motion because the tortious interference claim against Ocean Spray would disappear if the district court determined that there was no exclusive contract between Gilette and Bayernwald.[4] Gilette crossmoved for summary judgment on its contract claim. The district court denied Bayernwald's and Ocean Spray's motion as well as Gilette's cross-motion on November 23, 1987, because genuine issues of material fact existed about the existence of the contract Gilette alleged at the time the breach was said to have occurred.

Gilette filed a Second Amended Complaint on November 24, 1987. It alleged essentially the same claims but added an additional prayer for relief. Bayernwald and Ocean Spray filed a second motion for summary judgment on December 4, 1987. In this motion for summary judgment, Ocean Spray specifically contended that it did not interfere with the exclusive con-

---

1. While the caption indicates that "Gilette" is spelled with two "l"'s, the parties agree that the correct spelling is "Gilette," and we shall use the spelling that they endorse.

2. Based on this disposition, we need not reach the question of whether Bayernwald's motion for sanctions was untimely under the supervisory rule requiring motions requesting Rule 11 sanctions to be made before judgment on the merits that we adopted in *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 100 (3d Cir.1988), because it was not made until after the district court had entered judgment against Gilette on the merits of its claims. Accordingly, we do not decide whether the rule announced in *Mary Ann Pensiero* governing Rule 11 sanctions should be extended to cases involving sanctions under the court's inherent power. We likewise need not and do not decide whether Liotta had fair notice that the district court would visit sanctions upon him as the attorney presenting Gilette's case, what type of notice should be required or the related question of how or when such notice should be framed.

3. The complaint was amended on October 20, 1987 to include claims against Bayernwald for trademark infringement and unfair competition. The district court entered summary judgment against Gilette on those claims on September 27, 1988. Appendix (App.) at 5, 34–44. The sanction in this case involves only Gilette's claim against Ocean Spray.

4. Bayernwald and Ocean Spray have been jointly represented throughout these proceedings.

tract between Gilette and Bayernwald.[5] The district court denied the motion for summary judgment on the tortious interference claim, holding that there were still genuinely disputed facts material to the existence of the contract at the time the alleged tortious conduct took place and on the extent of Ocean Spray's knowledge of the disputed contract between Gilette and Bayernwald. Appendix (App.) at 83–84.

Bayernwald and Ocean Spray filed a third motion for partial summary judgment in November of 1989. This motion focused on whether the exclusive contract between Gilette and Bayernwald, if it existed, was terminated. The district court denied the motion and ordered the case to be tried without a jury.

The trial lasted from January 14 through 18, 1991. During the trial, Ocean Spray moved for involuntary dismissal of Gilette's tortious interference claim. The court summarily denied that motion. In an opinion entered on February 12, 1991, however, the district court held that "Ocean Spray did not intentionally and unjustifiably induce Bayernwald to breach any agreement it had with Gilette." App. at 535. It also held "after having an opportunity to hear the witnesses and review the documents," that the tortious interference claim against Ocean Spray was

> totally without merit. [I]t narrowly escapes the assessment of a Rule 11 sanction. The inclusion of Ocean Spray as a defendant in this dispute was an egregious litigation tactic calculated to disrupt a long and honorable relationship that pre-existed Gilette's corporate existence. In the aftermath of this litigation, counsel for Gilette should rethink its obligations to both the client and the Court as it pertains to claims of this nature.

*Id.* at 536. The district court entered judgment in favor of Bayernwald and Ocean Spray on February 19, 1991.

On March 1, 1991, pursuant to Federal Rule of Civil Procedure 59(e), Bayernwald moved for attorney's fees it had incurred in

defending Ocean Spray and for costs incurred by both Ocean Spray and Bayernwald. Bayernwald asked the district court to award the attorney's fees attributable to the defense of Ocean Spray under its inherent power and claimed those fees amounted to approximately $300,000.00. Bayernwald also asked the district court to reconsider its earlier denial of Federal Rule of Civil Procedure 11 sanctions against Gilette and Liotta. Gilette, represented by Liotta, opposed the motion.

On April 24, 1991, the district court wrote to both parties directing Bayernwald to detail its expenditures on Ocean Spray's defense within fourteen days and requiring Gilette to furnish the court with information about its ability to pay the total amount so detailed within ten days thereafter. The letter did not mention the possibility that fees or costs could be assessed against Liotta.

On August 27, 1991 the district court granted Bayernwald's motion. In doing so, it relied on its inherent power to sanction both Gilette and its counsel for serious improprieties in the presentation of Gilette's claim for tortious interference against Ocean Spray. The district court rationalized Gilette's previous escapes from summary judgment by noting that just because Gilette

> barely survived Ocean Spray's motions [for summary judgment] does not mean, in view of the evidence presented to the Court at trial, that the tortious interference claim was well founded. On the contrary, the evidence demonstrated that with respect to each of the points on which plaintiff managed to survive summary judgment, it had no case.

*Id.* at 588. The district court then made a specific finding that the inclusion of Ocean Spray in the lawsuit was "bad faith litigation." *Id.* at 591. It also decided that any award of fees should be split between Gilette and its counsel:

> Although counsel, as trained lawyers, should have known that the tortious interference claim was utterly without

**5.** Ocean Spray's position on this claim was not presented to the district court in the October 1987 joint motion of Bayernwald and Ocean Spray.

merit both factually and legally, Gilette pursued the claim with fervor and intensity to force Bayernwald to capitulate to its demands in order to protect Ocean Spray. It is only appropriate that Gilette accept an equal amount of the attorney fee award. Therefore, the Court concludes that half be imposed upon counsel and half be imposed upon Gilette.

*Id.* at 593. The district court awarded total attorney's fees of $50,000.00 and divided that sum evenly between Liotta and Gilette. App. at 594. Judgment was entered on this attorney's fees award on October 18, 1991. Liotta filed a timely notice of appeal.[6]

## II.

We have jurisdiction over Liotta's appeal of the district court's final order imposing sanctions on him. *See* 28 U.S.C.A. § 1291 (West Supp.1992). The district court had subject-matter jurisdiction based on diversity of citizenship, *see* 28 U.S.C.A. § 1332(a)(1) (West Supp.1992), and removal jurisdiction, *see* 28 U.S.C.A. § 1441(a) (West Supp.1992).

While we review the "court's imposition of sanctions under its inherent power for abuse of discretion," *Chambers v. NASCO, Inc.,* — U.S. —, —, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991), the issue of what standard the district court should apply in exercising that discretion is a legal issue that receives plenary review. *See Snow Machines, Inc. v. Hedco, Inc.,*

838 F.2d 718, 725 (3d Cir.1988). Finally, we must affirm any findings of fact that are subsidiary to application of the standards by which the law limits a court's discretion unless they are clearly erroneous. *See Hackman v. Valley Fair,* 932 F.2d 239 (3d Cir.1991).

## III.

Because the district court held that the tortious interference claim against Ocean Spray "narrowly escape[d] the assessment of a Rule 11 sanction," App. at 536, and reaffirmed that point in its sanction opinion, Liotta contends that it erred in sanctioning him under its inherent power. The crux of his argument rests on the difference between the objective standard of reasonableness for imposing Rule 11[7] sanctions and the subjective bad faith standard that we have required when a court imposes sanctions under its inherent power to control the conduct of the parties and their counsel appearing before it. *Landon v. Hunt,* 938 F.2d 450, 454 (3d Cir.1991) (per curiam). Liotta argues a claim that does not violate Rule 11 cannot be unreasonable, and a claim that is not unreasonable cannot include the element of bad faith. Bayernwald argues that the broad proposition Liotta asserts would render the district courts helpless in the posture of this case because the court's inherent power was the only available basis for sanctioning a lawyer like Liotta who did not sign the Second Amended Complaint.[8]

---

**6.** The notice of appeal was actually filed between the district court's announcement of its judgment on the sanctions motion and its entry of judgment for the sums awarded. It is nevertheless deemed to be timely filed after the judgment was actually entered under Federal Rule of Appellate Procedure 4(a)(2).

**7.** Rule 11 reads, in relevant part:
Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a

good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
Fed.R.Civ.P. 11.

**8.** Bayernwald also maintains that the district court never held the tortious interference claim met Rule 11 scrutiny. The district court's own

■ Though we hold the district court erred in imposing sanctions on Liotta under the circumstances present in this case, we will not adopt the broad rule Liotta proposes that once a claim is held not to violate Rule 11, the court is prevented from imposing sanctions under its inherent power. In *Chambers v. Nasco, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court considered the boundaries of a federal court's inherent power.

> [A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." ... The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

*Id.* at ——, 111 S.Ct. at 2133 (internal citations and quotations omitted). Nevertheless, a court's inherent power "must be exercised with restraint and discretion." *Id.* at ——, 111 S.Ct. at 2132.

In *Chambers*, the Supreme Court held that Rule 11 does not displace a court's inherent power because "the inherent power must continue to exist to fill in the interstices." *Id.* at ——, 111 S.Ct. at 2134. It also said that:

> [W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court ordinarily should rely on the rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power.

*Id.* at ——, 111 S.Ct. at 2136.

Here, because Liotta did not sign the Second Amended Complaint, his conduct was arguably beyond the reach of Rule 11. *See Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir.

1989); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir.1987). The district court, however, made no finding that Liotta was not subject to Rule 11 sanctions because he did not personally sign the amended complaint, a possible explanation for its resort to its inherent power. *See id.*, —— U.S. at ——, 111 S.Ct. at 2135. The sole basis for the sanction against Liotta was the inclusion of the tortious interference claim in the Second Amended Complaint. App. at 591–94. The district court wrote:

> As of October, 1987 Gilette had completed the depositions of all of Ocean Spray's employees and all but one of Bayernwald's employees; moreover, Gilette had received the bulk of defendants' document production, including their important trial exhibits. Thus, at the time of the filing of the Second Amended Complaint in November 1987, plaintiff's counsel had been involved in the case for seven months and had done substantial discovery. Any review of the documents produced by defendants, in addition to the plaintiff's documents, should have resulted in plaintiff's counsel realizing that the previous complaints were not well grounded in fact or law. Contrary to defendants' argument, there is no ongoing duty to amend or correct a pleading to conform to after-acquired knowledge. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir.1988). But plaintiff did not rest on its earlier complaints. Rather, it filed—and prosecuted—yet another complaint that included factually and legally unsupportable allegations. Gilette's bad faith in initiating and prosecuting this claim against Ocean Spray is manifest.

*Id.* at 591 (footnote omitted).

■ Because the district court found that the bringing of the tortious interference claim could escape Rule 11 sanctions, yet later pointed to the very same claim in imposing sanctions under its inherent power, we must compare the standards employed in imposing each type of sanction to determine if the two findings are consistent. "[A] prerequisite for the exercise of

language belies this contention. We therefore reject that argument.

the district court's inherent power to sanction is a finding of bad faith conduct." *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir.1991) (per curiam). In contrast, the Rule 11 test "is ... an objective one of reasonableness." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986) (quoting *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir.1985)). Rule 11 can be viewed as a reinforcement of the inherent sanction powers available to a court. Thus, the Supreme Court has said: "Rule 11 ... imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers*, —— U.S. at ——, 111 S.Ct. at 2134 (citing *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, —— U.S. ——, ——, 111 S.Ct. 922, 932, 112 L.Ed.2d 1140 (1991)). "Indeed, Rule 11 was amended in 1983 precisely because the subjective bad-faith standard was difficult to establish...." *Id.*, —— U.S. at ——, 111 S.Ct. at 2134 n. 11.[9]

Between the time of the determination that Rule 11 was inapplicable and the court's decision to sanction him, the district court points to no conduct that it found objectionable. Instead, it determined as a matter of hindsight that Liotta and Gilette acted in bad faith in bringing the claim in the first instance. Thus, it failed to reconcile its finding of bad faith with its prior determination that the claim was reasonable.

■ We therefore find it hard to conceive how the tortious interference claim survives Rule 11 scrutiny, yet can be sanctioned as a claim brought in bad faith. Perhaps recognizing this difficulty, the district court speculated that the claim

against Ocean Spray for tortious interference was brought to make "Bayernwald, out of concern for Ocean Spray, ... succumb to Gilette's demands." App. at 591. The law does not prevent one litigant from bringing a claim against another in order to force others to accede to its demands if the claim asserted has a reasonable basis. Indeed, lawsuits are generally brought for the specific purpose of making the opponent "succumb" to the adversary's demands.[10]

■ We recognize that the district court's opinion does refer to bad faith in "initiating and prosecuting this claim." *Id.* Read as a whole, however, we think it imposes sanctions on Liotta solely in reliance on his actions in asserting and maintaining the claim for tortious interference on behalf of Gilette set out in the Second Amended Complaint. We also believe that on this record the district court's finding that Liotta acted in bad faith was clearly erroneous. Ocean Spray sought and was denied summary judgment on the tortious interference claim on three different occasions. It also sought and was denied involuntary dismissal during the trial. In disposing of the last motion for involuntary dismissal, the court determined Gilette's tortious interference claim was sufficiently plausible to survive a Rule 11 sanction. This determination necessarily implied that the claim, even at that point, was reasonable. The record indicates the district court's frustration with both parties in this case. *See* App. at 246–47. That frustration, however, is not enough in and of itself to justify use of a court's inherent power to sanction, a power that should be exercised

---

9. The Supreme Court also noted in *Chambers* that "the bad-faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper 'is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Id.*, —— U.S. at —— n. 10, 111 S.Ct. at 2133 n. 10 (quoting Fed.R.Civ.P. 11). Thus, if Gilette's tortious interference claim "narrowly escape[d]" Rule 11 because it did not violate the certification requirement, the district court's bad-faith finding

would squarely contradict the holding that Rule 11 was not violated.

10. We do not think our decision is inconsistent with the Supreme Court's statement in *Chambers*, "if in the informed discretion of the court, ... the rules are [not] up to the task, the court may safely rely on its inherent power." *Id.* at ——, 111 S.Ct. at 2136. We believe this statement referred to the ability of a court to impose sanctions under its inherent power when some of the attorney's conduct could be sanctionable under Rule 11 and other rules. *Id.*

815

with "restraint and discretion." *Chambers*, at ——, 111 S.Ct. at 2132.

### IV.

Accordingly, we hold that Gilette's reasonable claim for tortious interference could not have been brought in bad faith. Because we have previously held bad faith is required before sanctions can be imposed under a court's inherent power, we will reverse the district court's $25,000.00 sanction against Liotta.