

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-1995

# Martin v Brown

Precedential or Non-Precedential:

Docket 94-3248

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Martin v Brown" (1995). *1995 Decisions.* Paper 232.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/232

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

———————

No. 94-3248

———————

LEON M. MARTIN

v.

HAROLD ED BROWN, an individual; KYLE ENERGY, INC.,
a Pennsylvania Corporation; KYLE ENERGY AND KYLE ENERGY
CORPORATION, a Pennsylvania Corporation

REBECCA E. BENDER*
(*Pursuant to Rule 12(a), F.R.A.P.),
Appellant

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 86-cv-01239)

———————

Argued:  October 27, 1994

PRESENT:  STAPLETON, HUTCHINSON and ROSENN, <u>Circuit Judges</u>

(Filed  August 23, 1995)

———————

Rebecca E. Bender, Esquire                    (Argued)
Rebecca E. Bender & Associates, P.A.
Minnesota Law Center
514 Nicollet Mall
Suite 570
Minneapolis, MN  55402-1021
        Attorneys for Appellant

---

OPINION OF THE COURT

---

HUTCHINSON, <u>Circuit Judge</u>.


I.  <u>Introduction</u>

Appellant, Rebecca E. Bender ("Bender"), an attorney who represen[ts]

defendants, Harold E. Brown, Kyle Energy, Inc. and Kyle Energy and Kyle Ene[rgy]

Corporation,[0] in this action, appeals orders of the United States District C[ourt]

Western District of Pennsylvania sanctioning her for refusing to comply wit[h an]

order and for refiling two motions the court reserved for trial after denyi[ng them without]

prejudice.[0] The discovery sanctions required Bender and Brown to pay $500 ea[ch for]

costs plaintiff Leon M. Martin ("Martin") incurred in connection with the d[iscovery]

request.  Bender's and Brown's liability for these costs was joint and seve[ral. The]

sanction for refiling the two motions required Bender individually to pay a[nother]

$500.  In an accompanying memorandum, the district court stated that it was [imposing]

sanctions under Rule 11, Rule 37, 28 U.S.C.A. § 1927 (West 1994) and the co[urt's inherent]

power.

Brown shortly thereafter filed for bankruptcy in the Middle Distr[ict]

Bankruptcy Court.  Martin's case against Brown was stayed under the automat[ic stay of the]

Bankruptcy Code § 362, 11 U.S.C.A. § 362 (West Supp. 1995), and the distric[t court entered]

an order dismissing Martin's case against Brown without prejudice.  Bender [continues to]

represent Brown in the bankruptcy, which is still pending.

---

[0]Bender represented all three defendants.  For the sake of simplicity, howev[er, we will]
refer solely to Brown.
[0]The orders Bender appeals are dated April 20 and April 25, 1994.  They impo[sed the]
sanctions.  The April 20 order, however, did not include the docket numbers [of the two in]
<u>limine</u> motions.  <u>See</u> <u>Martin v. Brown</u>, No. 86-1239, slip op. at 1 n.1 (W.D. [Pa. April 25,]
1994).

3

Under the circumstances of this case, we hold that we have appell

jurisdiction over Bender's appeal despite the fact that the district court

underlying action "without prejudice."  Appellant's Appendix ("App.") at 66

hold that the manner in which the district court judge imposed these sancti

Bender of the essentials of procedural due process, viz, fair notice and an

be heard. Because of our disposition of this appeal on procedural grounds,

unnecessary for us to decide the propriety of the sanctions imposed on Bend

therefore vacate the district court's orders imposing sanctions on Bender a

case to it for further proceedings consistent with this opinion.

## II.  Statement of the Case and Facts

In November 1992, Brown retained Bender as defense counsel in an

which Martin claimed Brown violated federal securities laws, the Racketeeri

and Corrupt Organizations Act ("RICO"),[0] and engaged in state common law fra

of contract by selling or offering to sell interests in numerous gas well p

On December 30, 1992, the district court issued an order disposin

Martin's discovery motions.  The order included a provision granting Martin

inspect certain real property Brown owned.  This part stated, "[t]he defend

arrangements with plaintiff for inspection [of the real property] on or bef

1993."  App. at 106.  The real estate covered included Brown's personal res

laundromat he owned.  Bender refused to permit inspection of the real prope

believed it was irrelevant to any liability Brown might have to Martin or a

might owe after the RICO claim had been dismissed.

On January 22, 1993, Martin's counsel sent a telex to Bender info

Martin's continuing insistence on inspecting these properties.  Bender resp

---

[0]The district court dismissed the RICO count on October 23, 1990, before Ben
association with the case.

4

day by denying the request for inspection and reiterating her contention th

of the real property had no relevance to any of Martin's surviving claims.

February 1993, Bender sent a letter to Martin's attorney asking him to clar

the inspection of these properties.

In March 1993, Bender filed ten in limine motions. They were unre

discovery dispute.  She also filed a motion to dismiss the federal security

that the interests in gas wells Martin claimed Brown fraudulently offered f

not securities as defined by federal law. Alternatively, Bender moved to ce

issue for immediate appeal believing an interlocutory determination could e

dispose of Martin's only remaining federal claim. See 28 U.S.C.A. § 1292(b)

This was the third time Brown had raised the lack-of-a-security question.[0]

in limine motions Bender had filed was yet a fourth attempt to relitigate t

issue.  In another of Bender's ten in limine motions, she also raised for t

the statute of limitations as a defense.[0]

On March 31, 1993, with the dispute over inspection of Brown's re

unresolved, Martin filed a Rule 37 motion to sanction Brown for her refusal

the December 30, 1992 order.  In April 1993, Bender filed a response and Ma

filed a reply.  In an order entered April 30, 1993, the district court deci

Martin's Rule 37 motion for sanctions under advisement, "subject to the par

attorneys' compliance with discovery directives set forth" in the memorandu

its order.  App. at 593.  The memorandum criticized both parties for their

discovery, warned them that sanctions would be imposed for future noncompli

letter or spirit of the discovery rules and cautioned them about the use of

---

[0]The issue was first decided in October 1990 and then again in December 1992
without prejudice.
[0]The issue was also first decided in October 1990.

verbiage," "superfluous language" and the filing of unwarranted motions and long papers.  App. at 587.

Also on April 30, 1993, the district court denied Bender's motion the security issue and refused to certify it for interlocutory appeal.  Con also rejected Bender's in limine motion concerning the security issue, reas was "in part a disguised motion to relitigate the 'securities' issue," App. once more denied the statute of limitations issue as repetitive, but again prejudice to Brown's right to raise it at trial.  The court warned, however instructed not to make any further attempts to relitigate this issue prior merits." App. at 589.

After the April 30, 1993 order, counsel on each side seemed to ha effort to resolve the outstanding discovery issues.  Sometime around July 1 original counsel, Thomas E. Rodgers ("Rodgers"), was hospitalized. Thereaft represented by a lawyer named David H. Cullis ("Cullis").  Bender contends unfamiliarity with her discussions with Rodgers revived the inspection prob

In January 1994, the district court dismissed without prejudice B remaining in limine motions and Martin's motion for sanctions.  With the re the dispute concerning inspection of Brown's real estate, the district cour directed the parties to negotiate outstanding matters and to resubmit forma or before April 1, 1994, for judicial resolution of any pre-trial matters t The district court instructed counsel to append to any such motions a certi they had tried, in good faith, to resolve their dispute.

---

[0]Bender argues that a number of problems in this case resulted from the entr counsel.  The record, however, suggests that Cullis may have had some previ relationship to the case or to prior counsel.  The record shows the followi letterhead indicates that he was a sole practitioner. Cullis practiced in a Rodgers and Cullis, P.C. Rodgers and Cullis, P.C.'s letterhead lists two pa Patricia A. Rodgers and Cullis.  Rodgers and Rodgers & Cullis, P.C. have th phone and facsimile number listed on their respective letterheads.  Further responded to correspondence sent to Rodgers before his illness forced him o

6

On March 16, 1994, Bender sent a letter directly to the judge pre[siding over the]
case. In it, she enclosed all ten of the in limine motions she had present[ed in]
March 1993, including for the fifth time the securities issue and, also, th[e statute of]
limitations defense that the district court, in its April 30, 1993 order, e[xpressly]
directed her not to resubmit until trial. Martin also refiled several of hi[s motions,]
including the Rule 37 motion for sanctions for Brown's failure to afford in[spection of]
real estate.

On April 8, 1994, the district court entered another order. It a[gain directed]
the parties to meet in an effort to resolve Martin's outstanding discovery [motions and]
Brown's ten in limine motions. The court also noted that Bender had failed [to file with]
the clerk the motions forwarded with her March 16, 1994 letter. The order [set an]
April 15, 1994 hearing for unresolved matters. In its April 8, 1994 order, [the district]
court echoed its warning to the parties and their counsel that sanctions co[uld be imposed]
for conduct that "is in violation of the Rules of Civil Procedure and/or th[e Rules of]
Professional Conduct." App. at 647.

Bender did not appear personally at the April 15 hearing. She ha[d not filed]
her in limine motions with the clerk of the district court, but Brown's loc[al counsel was]
present and tried to argue their merits. The district court questioned him[, inter alia,]
about Bender's persistent refiling of motions denied without prejudice pend[ing trial as]
well as her refusal to permit inspection of all the real estate included in[ the court's]
December 30, 1992 order. It ordered Bender, on or before April 20, 1994, t[o file with the]
clerk the motions that she previously mailed to the judge with her March 16[, 1994 letter]
before it would consider them. On April 20, 1994, Bender again filed all t[en in limine]
motions.[0] On that day the district court entered its initial April 20, 1994[ order which]

_____

[0]Bender claims that she only filed these ten in limine motions because the [district court]
ordered her to do so. Thus, she contends that any sanctions imposed upon h[er were improper.]
We need not decide this issue because of our resolution of this case on pro[cedural]
grounds. We note, however, that when the district court directed Bender to[ file the motions,]

7

imposing sanctions on Bender and Brown and, on April 25, revised the April

adding the docket numbers of the in limine motions.

Bender appeals from those portions of both orders sanctioning her

and flagrant" disregard of the court's orders by "resurrecting and advocati

motions in limine regarding 'lack of a security' and the 'statute of limita

defense'"; App. at 654-55, and "for refusal to permit meaningful inspection

property in compliance with [the] court's orders . . . ." Id. at 652-53.

persistence in raising questions the district court had decided, or indicat

defer to trial, the court ordered Bender to pay $500 personally. For prohi

from inspecting certain properties, the court ordered Bender and Brown each

and, jointly and severally, any costs Martin had incurred in attempting to

inspection.

### III.  Jurisdiction

The district court had subject matter jurisdiction over the under

between Martin and Brown under 15 U.S.C.A. § 78a et seq. (West Supp. 1995)

§§ 1341 and 1343 (West 1993).  Bender contends that the district court's or

April 20 and 25, 1994 are "final decisions" over which we have appellate ju

under 28 U.S.C.A. § 1291 (West 1993). Although no appellee is present to re

contention,[0] we have a threshold obligation to consider our appellate juriso

e.g., Hoots v. Commonwealth of Pa., 639 F.2d 972, 978 (3d Cir. 1981).

---

clerk the ten in limine motions she had enclosed in her March 16, 1994 lett
judge, it only ordered Bender to comply with its rules of procedure.
[0]Appeals of attorney sanctions often present this procedural problem because
appellee.  See Snow Machines, Inc. v. Hedco, Inc., 838 F.2d 718, 725 (3d Ci
Thus, "[w]e must play not only our accustomed and proper role of neutral ad
also (albeit temporarily) the role of adversary to the appellant in order t
assertions made on appeal." Id. at 726.  In limited situations, we have app
achieve the benefits of the adversarial system.  See Eash v. Riggins Trucki
F.2d 557, 559 n.1 (3d Cir. 1985).  We believe that action is unnecessary in

8

## A.  Strict Finality

Our appellate jurisdiction is generally limited to the review of of the district courts.  *United States v. Bertoli*, 994 F.2d 1002, 1010 (3d *also* 28 U.S.C.A. § 1291.[0]  Section 1291 states:  "The courts of appeals . . jurisdiction of appeals from all final decisions of the district courts of States . . . except where a direct review may be had in the Supreme Court." § 1291.  "A final decision is one which disposes of the whole subject, give relief that was contemplated, provides with reasonable completeness, for gi the judgment and leaves nothing to be done in the cause save to superintend ministerially, the execution of the decree."  *Isidor Paiewonsky Associates,* *Properties, Inc.*, 998 F.2d 145, 150 (3d Cir. 1993) (internal brackets, quot and citations omitted).

The district court's order dismissing the litigation underlying B sanctions states:

> IT IS ORDERED the action is dismissed without prejudice and the C
> shall mark the case closed.  The Court retains complete jurisdict
> to vacate this Order and to reopen the action upon cause shown th
> the stay has been lifted or further litigation is necessary.

App. at 664.  In *Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 197 curiam), we held that "[g]enerally, an order which dismisses a complaint wi is neither final nor appealable because the deficiency may be corrected by without affecting the cause of action."  In that case, and in subsequent ca recognized that exceptions exist, *e.g.*, when the party "cannot amend or dec intention to stand on his complaint."  *Id.* at 952.  The dispositive inquiry district court's order finally resolved the case. *See*, *e.g.*, *Presbytery of*

---

[0]Although section 1292 authorizes appeals of certain specified non-final or applicable here.  28 U.S.C.A. § 1292 (West 1993 & Supp. 1994).

9

Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1461 & n.6 (3d Cir. 1

N.A.A.C.P. v. Harrison, N.J., 907 F.2d 1408, 1416-17 (3d Cir. 1990).

In Trent v. Dial Medical of Florida, Inc., 33 F.3d 217 (3d Cir. 1

addressed the effect on our appellate jurisdiction of a district court's st

dismissal pursuant to Colorado River abstention.[0]  We stated that "[e]ven di

without prejudice have been held to be final and appealable if they end the

the District Court was concerned, although . . . such dismissals may not co

orders until the party seeking relief renounces any intention to reinstate

Id. at 220 (internal quotation, citation and brackets omitted).  In relianc

Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), we held th

was whether the purpose and effect of the stay order was to surrender juris

federal suit to a state court.  Id. at 221 (quoting Moses H. Cone, 460 U.S.

Bender argues similarly that the district court's dismissal effec

this case.  Her client, Brown, is in bankruptcy and she no longer represent

Martin may assert his claims against Brown in the bankruptcy court, he is p

recommencing them in the district court while the bankruptcy is pending.  M

be foreclosed from subsequently asserting his claims unless the bankruptcy

Brown a discharge.  Accepting Bender's argument, however, would require us

the invocation of the bankruptcy code's automatic stay would always result

disposition triggering appellate review.  That result would be inconsistent

rationale behind the automatic stay provision.  See, e.g., Raymark Industri

F.2d 1125, 1130 (3d Cir. 1992) (automatic stay provides "a breathing spell

which stops all collection efforts") (internal quote omitted). Furthermore,

U.S. Capital Corp., 990 F.2d 780, 786 (3d Cir. 1993), we held that a dismis

prejudice based on the defendants' bankruptcy filing was not final because

---

[0]See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800

were "free to seek relief from the automatic stay and pursue their claims a

defendants," and because the case had "the potential to lead to piecemeal a

Although this case is dormant, if not dead, with regard to Martin's claims

our analysis under section 1291's strict finality rule requires us to look

case, including Bender's conduct in allegedly not complying with the distri

orders. Thus, we are unable to say the district court's dismissal without

finally determined the entire case and, therefore, we conclude that our jur

be based on the collateral order doctrine.


## B. The Collateral Order Doctrine

The collateral order doctrine, as first annunciated in Cohen v. B

Indus. Loan Corp., 337 U.S. 541 (1949), relaxes the strict standard of fina

permitting us to entertain appeals from certain orders that would not other

appealable final decisions. See Johnson v. Jones, No. 94-455, 1995 WL 3472

June 12, 1995) ("[I]n [Cohen], this Court held that certain so-called colla

amount to 'final decisions,' immediately appealable under . . . 28 U.S.C. §

though the district court may have entered those orders before (perhaps lon

case has ended."); Bertoli, 994 F.2d at 1010 ("The flexibility given by Coh

permits appeal of some district court orders that do not terminate the enti

even a discrete part of it."). The collateral order doctrine recognizes th

achieved by the final decision rule can sometimes be outweighed by other co

Johnson, 1995 WL 347244, at *3 ("sometimes interlocutory appellate review h

countervailing benefits"). The case law on the collateral order doctrine i

its requirements clear. It permits appellate review of orders that: (1) f

a disputed question; (2) raise an important issue distinct from the merits

and (3) are effectively unreviewable on appeal from a final judgment. See,

Equipment Corp. v. Desktop Direct, Inc., 114 S. Ct. 1992, 1995-96 (1994); P

11

Properties, Inc. v. Colonial Sav. Bank, S.L.A., 947 F.2d 49, 54 (3d Cir. 19

Properties, we described these three requirements as: (1) the "conclusiven

the "importance/separateness" prong; and (3) the "unreviewablity" prong. P

Properties, 947 F.2d at 54-58. Failure to meet any one prong precludes a f

appellate jurisdiction. Bertoli, 994 F.2d at 1012.


## 1. The "Conclusiveness" Prong

"The requirement that the district court's order 'conclusively de

question means that appellate review is likely needed to avoid that harm."

WL 347244, at *4. An order "is conclusive when no further consideration is

by the district court." Bertoli, 994 F.2d at 1011 (citations omitted). Th

conclusiveness prong excludes from review "'any decision which is tentative

incomplete.'" Swint v. Chambers County Com'n, 115 S. Ct. 1203, 1208 (1995)

Cohen, 337 U.S. at 546, and citing Coopers & Lybrand v. Livesay, 437 U.S. 4

In Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 537

we addressed the applicability of the collateral order doctrine to appeals

sanctions. We concluded that there could be "no dispute" that the conclusi

was satisfied because "[t]he sanctions order challenged . . . finally and c

determines the sanctions issue." Eavenson, 775 F.2d at 538. Similarly, in

Distributors, Inc. v. Maico-Fahrzeugfabrik, 658 F.2d 944 (3d Cir. 1981), al

ultimately found the Rule 37 sanctions there involved were not immediately

noted that the sanction order conclusively determined the disputed question

and thus satisfied the first element. Eastern Maico, 658 F.2d at 947; see

Lawrence R. Kemm, Note, Interlocutory Appeals of Attorney Sanctions: In Sea

Standard, 25 Ind. L. Rev. 919, 923 (1991) ("[T]here has been little discuss

disagreement that a sanction order represents a 'conclusive determination.'

cases).

12

We have no trouble concluding on the record before us that the di

orders sanctioning Bender were its final word on her liability for professi

misconduct. There is no indication that the court intended to revisit the

of the sanctions were ordered to be paid by April 29, 1994. Although Bender

has been conclusively determined, there remains a question with regard to t

Bender's liability on the sanction imposed for the expenses caused by her f

comply with the court's discovery order because that sanction has not yet b

The court order stated that "defendant Brown and attorney Bender, jointly a

are DIRECTED TO PAY to the Clerk of Court the reasonable travel expenses an

hourly fees incurred by plaintiffs for the services of Mr. John Welsch, MAI

he was unable to inspect defendants' properties, within 14 days of the fili

plaintiffs of a verified statement itemizing said expenses and fees." App.

Martin never filed a verified statement with the district court. Thus, the

sanction remains unquantified.

Generally, an order is not final until it is reduced to a determi

Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers

1080, 1089 (3d Cir. 1988); see also Apex Fountain Sales, Inc. v. Kleinfeld,

934–35 (3d Cir. 1994); United States v. Sleight, 808 F.2d 1012, 1015 (3d Ci

Becton Dickinson & Co. v. District 65, United Auto., Aerospace and Agric. I

Workers of Am., AFL–CIO, 799 F.2d 57, 61–62 (3d Cir. 1986). The need for q

arises from "concerns with duplicative expenditure of judicial time and res

Sleight, 808 F.2d at 1015. It is not without exceptions, however. See, e.

Seidman, 37 F.3d 911 (3d Cir. 1994). One exception applies to orders in wh

when determined, is insignificant in the overall context of the dispute and

unlikely to be the subject of a later appeal. Thus, we recently stated in

> [W]e have continued to recognize that an order is final even if i
> does not reduce the damages to a sum certain if "the order
> sufficiently disposes of the factual and legal issues and [if] an

13

> unresolved issues are sufficiently 'ministerial' that there would
> no likelihood of further appeal."

Apex, 27 F.3d at 936 (quoting Polychrome Int'l Corp. v. Krigger, 5 F.3d 152
(3d Cir. 1993)) (second alteration in original).

In this case, the sole discovery expense Martin incurred was the
retaining a single real estate appraiser to inspect the property. The dete
this amount is likely to be straightforward and mechanical, and it is also
result in a later appeal. Furthermore, Bender insists her concern is not t
her professional reputation. In Simmerman v. Corino, 27 F.3d 58, 64 (3d Ci
recognized that the impact of attorney sanctions goes beyond the dollar amo
"as a symbolic statement about the quality and integrity of an attorney's w
statement which may have tangible effect upon the attorney's career." In t
context of this case, the dollar amounts of the sanctions imposed and the p
liability for the unquantified sanction are insignificant in comparison to
effect. Furthermore, there is nothing in the record to explain Martin's de
the statement and it now appears highly unlikely that it will ever be filed
record leaves much to be desired, the district court's order limited Martin
whatever amount is due from, or paid by Martin to Welsch for the time Welsc
on which he showed up to inspect Brown's real estate and was not able to do
at 249-255. Because the only thing missing is an invoice from the appraise
limited lost time, we believe quantification is essentially a ministerial o
"mathematical" calculation that can be based on Welsch's bill for this time
case is distinguishable from those in which we have refused to entertain ap
unquantified orders holding attorneys liable for reasonable attorney's fees
course of a particular dispute. See In re Jeannette Corp., 832 F.2d 43, 45

1987).  We conclude that the district court's orders conclusively determine

question.


## 2.  The "Importance/Separateness" Prong

Turning to whether the matter is separate from the merits of the

been said that this prong "means that review now is less likely to force th

court to consider approximately the same (or a very similar) matter more th

also seems less likely to delay trial court proceedings (for, if the matter

collateral, those proceedings might continue while the appeal is pending)."

WL 347244, at *4.  This requirement of separateness "derives from the princ

should not be piecemeal review of steps toward final judgment in which they

Praxis Properties, 947 F.2d at 56-57 (internal quotation marks omitted).  A

sanctions, especially discovery sanctions, are, however, often too intertwi

merits of the underlying litigation to permit immediate review under the co

doctrine.  See Eavenson, 775 F.2d at 538 n.6; Eastern Maico, 658 F.2d at 94

Thus, in Eastern Maico, we stated that "sanctions for violation o

orders are usually considered interlocutory and not immediately appealable.

Maico, 658 F.2d at 947 (citations omitted).  In applying the separateness p

concluded, "[i]n order to address the question whether the documents reques

plaintiffs were truly relevant, we would have to consider the charges again

defendants and reach some conclusion as to the relative importance of the d

material."  Id.  Thus, we held that "the discovery activity at issue here i

completely collateral to the underlying action."  Id.

The circumstances of Eastern Maico, however, differ significantly

before us in Bender's case.  In Eastern Maico, the party challenging the sa

agreed that the sanction order could not "be adequately understood without

the entire discovery history in the case," which "would inevitably enmesh u

15

of relevance which could not be decided without reference to the underlying

at 951.  In contrast, in Bender's case we can review the district court's a

to comply with the mandates of procedural due process.  This review will no

in the merits of the underlying litigation.

Here, as in <u>Eavenson</u>, there is little danger that our review will

Brown is in bankruptcy, Martin's case against him has been dismissed and Be

represent Brown in the bankruptcy.  To the best of our knowledge, the under

litigation continues in the bankruptcy court.  Thus, Bender's sanction is "

and separate from the merits not only because the principal case cannot be

outcome of the sanction appeal, but also because the sanction appeal cannot

the outcome of the principal case." Lawrence R. Kemm, <u>supra</u>, 25 Ind. L. Rev

Thus, we conclude that the sanctions imposed against Bender are separate fr

underlying merits within the meaning of <u>Cohen</u>.[0]

This prong, however, contains two subparts.  The claim on appeal

that is "too important to be denied review." <u>Cohen</u>, 337 U.S. at 546.  Ther

also consider whether the issue Bender poses is important.  This question i

merged in discussion with the third prong of the <u>Cohen</u> doctrine because the

subsequent review affects the importance of the question.  <u>See</u> <u>Digital Equi

S. Ct. at 2001 (applying the importance requirement as part of the third pr

that other cases have properly applied it to the second prong, citing <u>Coope

437 U.S. at 468; <u>Lauro Lines S.R.L. v. Chasser</u>, 490 U.S. 495, 498 (1989)).

importance is reviewed as part of the second or the third prong, however, i

cannot be answered without a judgment about the value of the interests that

through rigorous application of a final judgment requirement." <u>Id.</u>  As note

---

[0]Our finding of separateness is dependent on the facts presently before us.
<u>Eavenson</u>, "[w]e do not now adopt a rule that would allow immediate appellat
sanction order imposed upon counsel, whether counsel has withdrawn from the
<u>Eavenson</u>, 775 F.2d at 539 (emphasis in original).

16

imposition of attorney sanctions may impose significant burdens on the repu career opportunities of the sanctioned attorney. We believe such potential compliance with the constitutional protections of due process, coupled with later opportunity for effective appellate review, is sufficient to meet the requirement of the collateral order doctrine. See Digital Equipment, 114 S ("Where statutory and constitutional rights are concerned, irretrievable lo be trivial . . . .") (internal quotations and brackets omitted).

### 3. The "Unreviewability" Prong

On the unreviewability prong of the Cohen requirements, we consid district court's orders will be "effectively unreviewable" if we do not rev Bertoli, 994 F.2d at 1012. To meet this requirement, "an order must be suc postponed will, in effect, be review denied." Id. (internal quotation mark omitted). For purposes of the collateral order doctrine, unreviewability "m failure to review immediately may well cause significant harm." Johnson, 1 at *4 (citing 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and P § 3911, pp. 334–35 (1992)).

In Eastern Maico, we concluded that we lacked appellate jurisdict collateral doctrine, in part, because the attorney was unable to satisfy th requirement. We held that the orders would "be fully reviewable on appeal judgment: the parties to the order will still be before the court, and ret interest in challenging the order as they have today." Eastern Maico, 658 As Bender is no longer involved in the underlying case, Eastern Maico is no In this regard, Bender is in a situation more similar to the attorney sanct Eavenson. There, we stated:

> Because appellant [] is no longer connected with the merits of th
> case, he has an immediate interest in challenging the sanction wh
> is not shared by the parties to the suit or by counsel to a party

17

Eavenson, 775 F.2d at 538-39. Bender, like the attorney in Eavenson and ag

attorney in Eastern Maico, is no longer a participant in the proceedings.

Bender is unlikely to have an adequate and effective opportunity for review

consider her appeal of the sanctions imposed on her now.

In sum, we hold that the sanction orders against Bender "conclusi

the disputed question," "resolve an important issue completely separate fro

the action," and are "effectively unreviewable on appeal from a final judgm

Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276 (1988) (ci

omitted). Thus, we have appellate jurisdiction under the collateral order

flexible concept of finality. Accordingly, we will now turn to the merits

appeal.


IV.   Standard of Review

We review orders imposing sanctions for abuse of discretion. See

NASCO, Inc., 501 U.S. 32, 55 (1991); Arab African Int'l Bank v. Epstein, 10

(3d Cir. 1993). When the procedure the district court uses in imposing san

due process issues of fair notice and the right to be heard, however, our r

plenary. See Fabulous Assoc., Inc. v. Pennsylvania Public Utility Commissi

780, 783 (3d Cir. 1990) (constitutional issues subject to plenary review);

Inc. v. Hedco, Inc., 838 F.2d 718, 725 (3d Cir. 1988); see also Gillette Fo

Bayernwald-Fruchteverwertung, GmbH, 977 F.2d 809, 812 (3d Cir. 1992) (apply

review to legal issues that arise in a sanctions context).


V.   Discussion

A.


18

Bender contends that the district court denied her notice and an

be heard when it sanctioned her for failure to comply with discovery.  The

Clause of the Fifth Amendment requires a federal court to provide notice an

opportunity to be heard before sanctions are imposed on a litigant or attor

Riggins Trucking Inc., 757 F.2d 557, 570-71 (3d Cir. 1985) (in banc); Lando

F.2d 450, 454 (3d Cir. 1991) (per curiam).

No precise all encompassing rule captures the requirements of pro

process.  The process that is due varies with the nature of particular disp

evaluation of its requirements should balance fairly the competing interest

sanctioned person against the judicial system's need for efficient judicial

administration.  See Corino, 27 F.3d at 64 ("The precise form of procedural

required will, of course, vary with the circumstances of the case."); Eash,

570 ("The form which those procedural protections must take is determined b

of all the circumstances and an accommodation of competing interests.").  N

the fundamental requirements of due process--notice and an opportunity to r

afforded before any sanction is imposed.  See Eash, 757 F.2d at 570 (citati

Jones v. Pittsburgh National Corp., 899 F.2d 1350, 1357 (3d Cir. 1990) (cit

F.2d at 570-71).  With regard to sanctions, particularized notice of the gr

sanction under consideration is generally required.  See, e.g., Corino, 27

Jones, 899 F.2d at 1357.[0]

_____

[0]Because we conclude that the district court failed to afford Bender procedu
process, we believe it is unnecessary and inappropriate for us to decide on
her contention that she engaged in no sanctionable misconduct.  We believe
court must first address these matters on remand, after Bender is afforded
safeguards required by the Due Process Clause.
[0]Recently, we upheld the imposition of sanctions under the bankruptcy court'
sanction power without requiring this type of "particularized notice."  Fel
& Braverman, P.C. v. Charter Technologies, Inc., No. 94-3461, 1995 WL 36987
June 22, 1995).  In that case, however, the sanctioned attorney was plainly
he was facing sanctions for conduct involving subjective bad faith.

Bender's due process argument has two prongs.  She argues that th

court failed to give her sufficient prior notice of the possibility of sanc

failed to relate specifically her conduct to the various theories it used t

sanctions.  She contends that the court required her to defend her actions

weapon the judicial arsenal has available for imposing sanctions on an atto

Bender's argument that the district court wholly failed to provid

somewhat overstated.  In its memorandum, the district court stated that the

imposed on Bender for failure to afford discovery were imposed under Rule 3

motion requesting Rule 37 sanctions for noncompliance with the court's disc

obviously referred to Rule 37. It was served on Bender and she filed a resp

district court also provided her sufficient opportunity to be heard.  It he

before deciding the issues Martin's Rule 37 motion raised.  Bender's electi

local counsel to state her position because of her own prior commitment is

Although Martin's motion only requested dismissal or preclusion of evidence

fair notice and an adequate opportunity to respond to Martin's request for

sanctions before their imposition.  See Corino, 27 F.3d at 64.

Bender's argument, however, that the district court's order impos

sanctions was overly broad, is more troubling. Rule 37 cannot justify the $

---

In this respect, the district court said:

> 1.   Plaintiff's Revised Motion for Sanctions Pursuant to Rule 37
> (Document No. 434) is GRANTED IN PART AND DENIED IN PART, as foll
> . . . c) plaintiff's request to sanction defendants and/or their
> counsel for refusal to permit meaningful inspection of real prope
> in compliance with this court's orders of December 30, 1992 and
> January 25, 1993, is GRANTED, and defendant Harold E. Brown and
> attorney Rebecca E. Bender are DIRECTED TO PAY to the Clerk of [t
> Court the sum of $500.00 EACH for their willful refusal to comply
> the court's orders; [and they are both jointly and severally liab
> for the resulting costs to the plaintiff].

App. at 651-53.

20

the district court imposed on Bender for her refusal to allow discovery.[0]  A

contempt, the only monetary sanctions Rule 37 authorizes are "reasonable ex

resulting from the failure to comply with discovery.  Fed. R. Civ. P. 37 (1

Newton v. A.C.&S., Inc., 918 F.2d 1121, 1126 (3d Cir. 1990).[0]  The district

to explain the basis for the sanction amount.  Although the imposition of t

discovery costs are allowable under Rule 37, imposition of the unauthorized

the court's justification for these sanctions ambiguous and thus requires u

elsewhere in the court's opinion to determine the grounds for both these di

sanctions and the refiling sanction. The only other reference to the ground

is made in the district court's introduction.  There, the district court st

elaboration that it imposed sanctions under Rule 11, Rule 37, 28 U.S.C.A. §

inherent powers.[0]

---

[0]Although Rule 37 authorizes both punitive and compensatory damages, it requ
amount of any monetary damages to be specifically related to expenses incur
violations.  See Roadway Express, Inc. v. Piper, 447 U.S. 752, 763–64 (1980
Ford Motor Co., 636 F.2d 745, 747 (D.C. Cir. 1980) ("The principal purpose
is punitive, not compensatory.").  But see Media Duplication Services, Inc.
Software, 928 F.2d 1228, 1241–1242 (1st Cir. 1991).  The sanctions in Newto
Inc., 918 F.2d 1121 (3d Cir. 1990), and Media Duplication were imposed unde
not Rule 37(b)(2).  The latter is directed to a party or its agents. Rule 1
expressly to "a party or [its] attorney."

[0]Rule 37(b)(2) states in part:

> the court shall require the party failing to obey the order or th
> attorney advising that party or both to pay the reasonable expens
> including attorney's fees, caused by the failure, unless the cour
> finds that the failure was substantially justified or that other
> circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37 (1995).

[0]We reproduce the full text of the relevant portion of April 20 and April 25

> Penalties will now be imposed for the continued shenanigans of th
> parties and their counsel, who have been repeatedly warned that t
> court would take such action under the authority of the Federal R
> of Civil Procedure, especially F.R.C.P. Rules 11 and 37, 28 U.S.C
> § 1927, and its inherent power to correct abuses of the judicial
> process.

This scatter-gun approach is unfair to Bender.  It also makes our

deciding whether the district court acted consistently with a sound exercis

impossible on the record now before us.  <u>Jones</u>, 899 F.2d at 1358; <u>accord</u> <u>Fo</u>

<u>Associates, Inc.</u>, 943 F.2d 139, 141-42 (1st Cir. 1991); <u>United States v. In</u>

<u>of Teamsters</u>, 948 F.2d 1338, 1346 (2d Cir. 1991).  In <u>Jones</u>, <u>supra</u>, we addr

problem and held:

> Because the district court did not differentiate between Rul
> and [section 1927] in imposing sanctions, we are not in a positio
> even to know whether the district court applied the correct stand
> insofar as Rule 11 is concerned.  In consequence, the entire orde
> imposing sanctions on appellant must be vacated.

899 F.2d at 1358.  The district court's failure to relate its general groun

conduct (and her conduct alone) requires us to vacate its order sanctioning

remand this case for further proceedings in which the district court will h

opportunity to elaborate on Bender's conduct, as well as her state of mind,

the legal basis for each sanction imposed against Bender.

B.

Though we will not decide any of the other issues Bender raises,

be appropriate to comment briefly on some issues that are likely to come up

Rule 11 authorizes imposition of sanctions upon the signer of any pleading,

other paper that was presented for an improper purpose, <u>e.g.</u>, "to harass or

unnecessary delay or needless increase in the cost of litigation."  <u>See</u> <u>Lan</u>

at 452.  Rule 11 sanctions are based on "'an objective standard of reasonab

the circumstances.'"  <u>Id.</u> at 453 n.3 (quoting <u>Mary Ann Pensiero, Inc. v. Li</u>

90, 94 (3d Cir. 1988)).  Bad faith is not required.  <u>Id.</u>; <u>Jones</u>, 899 F.2d a

Rule 11(c)(1) provides that sanctions can be initiated either by motion or

App. at 651.

22

initiative.  When acting on its own initiative, however, the district court

enter an order describing the specific conduct that it believes will warran

direct the person it seeks to sanction to show cause why particular sanctio

be imposed.  See Rule 11(c)(1)(B); see also Rule 11(c)(3) ("When imposing s

court shall describe the conduct determined to constitute a violation of th

explain the basis for the sanction imposed.").  If the district court wishe

Bender under Rule 11, it should issue and serve on her an order to show cau

considering any response she may file, explain its rationale and describe t

conduct that supports the particular Rule 11 sanction imposed.[0]

Likewise, if the court desires to base any sanction on section 19

refer to that statute in the order to show cause and relate specific conduc

violation.  We note, however, that section 1927, unlike Rule 11, requires

Gaiardo v. Ethyl Corp., 835 F.2d 479, 484 (3d Cir. 1987). In addition, sect

Rule 37, authorizes only the imposition of costs and expenses that result f

particular misconduct the court sanctions.  Eash, 757 F.2d at 560.  Section

limits these costs and expenses to those that could be taxed to a losing pa

U.S.C.A. § 1920 (West 1994). Id.

---

[0]Rule 11 also has specific notice requirements echoing the Due Process Claus
Amendment.  See Corino, 27 F.3d at 64 ("The party sought to be sanctioned i
particularized notice including, at a minimum, 1) the fact that Rule 11 san
under consideration, 2) the reasons why sanctions are under consideration,
of sanctions under consideration.").

[0]Section 1927 states:

> Any attorney or other person admitted to conduct cases in an
> court of the United States or any Territory thereof who so multip
> the proceedings in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such
> conduct.

28 U.S.C.A. § 1927.

Usually, the inherent power that a district court retains to sanc

also requires bad faith.  Gillette Foods, 977 F.2d at 813 ("[A] court may a

attorney's fees when a party has acted in bad faith, vexatiously, wantonly,

oppressive reasons.") (internal quotations omitted); Landon, 938 F.2d at 45

prerequisite for the exercise of the district court's inherent power to san

finding of bad faith conduct."); but see Republic of Philippines v. Westing

Corp., 43 F.3d 65, 74 n.11 (3d Cir. 1994) (sanctions imposed under the cour

authority do not always require a showing of bad faith).[0]  We have previousl

care in the use of inherent powers to impose sanctions.  See Fellheimer, Ei

Braverman, 1995 WL 369875, at *8 ("'Because of their very potency,' . . . t

courts must be careful to exercise their inherent powers 'with restraint an

discretion.'") (quoting Chambers, 501 U.S. at 44); Republic of Philippines,

Generally, a court's inherent power should be reserved for those cases in w

conduct of a party or an attorney is egregious and no other basis for sanct

See Gillette Foods, 977 F.2d at 813.

In summary, if the district court on remand wishes to pursue sanc

Bender, it should do more than state generally the various grounds authoriz

should relate each sanction to some aspect of Bender's conduct and explain

conduct comes within the authority it relies on to impose it.  Any sanctio

against Bender should also be imposed solely because of her own improper co

considering the conduct of the parties or any other attorney.

VI.  Conclusion

---

[0]Bender correctly points out that the district court never used the term bad
order and suggests that there is no evidence that could support a finding o
The district court on remand will be in a position to determine, in the fir
whether Bender acted in bad faith.

For the reasons stated above, we will vacate the district court's
April 20 and April 25, 1994 insofar as they impose sanctions on Bender for
discovery and for refiling motions addressing issues already decided.  The
remanded to the district court for further proceedings consistent with this
Bender shall bear her own costs.

LEON M. MARTIN v. HAROLD ED BROWN, ET AL.
No. 94-3248

STAPLETON, Circuit Judge, dissenting:

I respectfully dissent because I believe we are without appellate

The court correctly concludes that the district court's order hav
of staying this case pending resolution of the bankruptcy proceeding is not
It also correctly concludes that an attorney who no longer represents a par
some circumstances appeal a sanction order under the collateral order doctr
I believe it errs in concluding that the order here appealed from meets the
"conclusiveness" prong of the collateral order doctrine.

The first of the two provisions of the order imposing sanctions o

provides as follows:

> [P]laintiff's request to sanction defendants and/or their co
> for refusal to permit meaningful inspection of real property in
> compliance with this court's orders of December 30, 1992 and Janu
> 25, 1993, is GRANTED, and defendant Harold E. Brown and attorney
> Rebecca E. Bender are DIRECTED TO PAY to the Clerk of Court the s
> $500.00 EACH for their willful refusal to comply with the court's
> orders; additionally defendant Brown and attorney Bender, jointly
> severally, are DIRECTED TO PAY to the Clerk of Court the reasonab
> travel expenses and standard hourly fees incurred by plaintiffs f
> the services of Mr. John Welsch, MAI, to the extent he was unable
> inspect defendants' properties, within 14 days of the filing by
> plaintiffs of a verified statement itemizing said expenses and fe
> . . .

App. at 659-60.

The court acknowledges that "the amount of this sanction remains

and that, generally, "an order is not final until it is reduced to a determ

(Slip op. at 17). It relies, however, on a venerable exception to the gene

as the Forgay-Conrad doctrine, see Forgay v. Conrad, 47 U.S. (6 How.) 201 (

is applicable to cases in which the order appealed from leaves nothing to d

"ministerial act." The court cites Apex Fountain Sales, Inc. v. Kleinfeld,

(3d Cir. 1994) as authority for its conclusion that this is such a case.

In Apex, this court held that an order establishing liability and

accounting, but not quantifying the amount of money to be paid the plaintif

defendant, was not a final order. We made clear that the word "ministerial

context of the Forgay-Conrad doctrine refers to "mechanical" acts, like mat

calculations, about which there can be no dispute. Only when the act remai

is "ministerial" in this sense can an appellate court proceed with assuranc

---

[0] In the Forgay case itself, the order appealed from directed the immediate
physical property to the plaintiff, as well as an accounting. The losing p
regarded as facing immediate irreparable injury and this fact has been rega
numerous courts as essential to the result reached. See 9 James W. Moore e
Federal Practice ¶110.11, at 89-97 (2d ed. 1995).

2

will "be no likelihood of [a] further appeal." Apex, 27 F.3d at 936 (quota

We stressed the importance of the considerations behind insisting on quanti

damages, quoting from the Supreme Court's decision in Van Cauwenberghe v. B

517 (1988):

> "Permitting piecemeal appeals would undermine the independence of
> district judge, as well as the special role that individual plays
> our judicial system.  In addition, the [finality] rule is in
> accordance with the sensible policy of avoiding the obstruction t
> just claims that would come from permitting the harassment and co
> a succession of separate appeals from the various rulings to whic
> litigation may give rise, from its initiation to entry of judgmen
> Van Cauwenberghe v. Biard, 486 U.S. 517, 521-22 n.3, 108 S.Ct. 19
> 1949 n. 3, 100 L.Ed.2d 517 (1988) (quotations omitted); see Catli
> United States, 324 U.S. 229, 233-34, 65 S.Ct. 631, 633-34, 89 L.E
> 911 (1945)("The foundation of this policy is not in merely techni
> conceptions of 'finality.'  It is one against piecemeal litigatio

Apex, 27 F.3d at 935 (alteration in original).

Most important for present purposes, we noted in Apex that this u

the importance of finality is "reflected in our cases holding that a distri

awarding 'reasonable' attorneys fees is not appealable until the fees are q

order to prevent two appeals -- one on whether attorneys fees should be awa

second on the amount of the award." Id.  In my view, a determination of "r

travel expenses" and reasonable[0] fees for the expert services of a professi

extent he was unable to inspect defendants' properties" holds no less poten

disagreement and a second appeal than does the typical determination of the

reasonable litigation expense and reasonable counsel fees following an unqu

of such expenses and fees.  Accordingly, I do not see how we can hear this

hereafter also hearing appeals from unquantified counsel fee awards.

---

[0]  While the district court's order refers to "standard hourly fees" rather
"reasonable fees," the former is obviously intended as an indicia of the la
not suggest to me that the potential for disagreement is less than that inh
lodestar determination.

My concern about the court's ruling on jurisdiction is based only [on the]

considerations we stressed in Apex. Piecemeal appellate review is an ineffi[ciency the]

federal judiciary can ill afford.  But today's ruling gives rise to a disti[nct, equally]

grave, concern.  An order is either final or it is not final and if it is f[inal there is]

but a limited period in which courts of appeals have jurisdiction to review [it. This]

makes it crucial that a party and its counsel be able to know with certaint[y when an order]

is final.  In the absence of such certainty, counsel must either flood us w[ith protective]

appeals or run the risk that appeal rights will be unintentionally foregone[. When the]

ministerial exception is extended beyond the realm of mathematic calculatio[n, uncertainty]

will necessarily be generated in an area where certainty is essential to th[e smooth]

operation of the appellate justice system.

I would insist that the amount of the sanctions assessed against [Ms. Bender be]

established before she is permitted to seek appellate review of those sanct[ions. There is]

nothing to be lost by so requiring and a great deal to be gained.

---

See 9 Moore et al., supra note 1, ¶ 110.11, at 98–99.

The court considers it significant that Martin has apparently not yet app[lied to have]
the sanction quantified and may not do so hereafter.  Ms. Bender, however, [is free to]
apply to the court for an order requiring quantification or the deletion of [that part of]
the order relating to Martin's expenses.

Nor am I persuaded by the court's suggestion that the district court's [order is]
appealable because it constitutes "a symbiotic statement about the quality [and propriety]
of" Ms. Bender's work.  We rejected such a suggestion in Eastern Maico Dist[ributors, Inc.]
v. Maico–Fahrzeugfabrik, G.m.b.H., 658 F.2d 944, 951 (3d Cir. 1981).

4