OPINION OF THE COURT
HUTCHINSON, Circuit Judge.
I. Introduction
Appellant, Rebecca E. Bender (“Bender”), an attorney who represented the defendants, .Harold E. Brown, Kyle Energy, Inc. and Kyle Energy and Kyle Energy Corporation,[1] in this action, appeals orders of the United States District Court for the Western District of Pennsylvania sanctioning her for refusing to comply with a discovery order and for refiling two motions the court reserved for trial after denying them without prejudice.[2] The discovery sanctions required Bender and Brown to pay $500 each plus the costs plaintiff Leon M. Martin (“Martin”) incurred in connection with the discovery request. Bender’s and Brown’s liability for these costs was joint and several. The sanction for refiling the two motions required Bender individually to pay an additional $500. In an accompanying memorandum, the district court stated that it was imposing these sanctions under Rule 11, Rule 37, 28 U.S.C.A. § 1927 (West 1994) and the court’s inherent power.
*1255 Brown shortly thereafter filed for bankruptcy in the Middle District of Florida Bankruptcy Court. Martin’s case against Brown was stayed under the automatic stay of Bankruptcy Code § 362,11 U.S.C.A. § 362 (West Supp.1995), and the district court entered an order dismissing Martin’s case against Brown without prejudice. Bender does not represent Brown in the bankruptcy, which is still pending.
Under the circumstances of this case, we hold that we have appellate jurisdiction over Bender’s appeal despite the fact that the district court dismissed the underlying action “without prejudice.” Appellant’s Appendix (“App.”) at 664. We also hold that the manner in which the district court judge imposed these sanctions deprived Bender of the essentials of procedural due process, viz, fair notice and an opportunity to be heard. Because of our disposition of this appeal on procedural grounds, it is unnecessary for us to decide the propriety of the sanctions imposed on Bender. We will therefore vacate the district court’s orders imposing sanctions on Bender and remand the case to it for further proceedings consistent with this opinion.
II. Statement of the Case and Facts
In November 1992, Brown retained Bender as defense counsel in an ongoing case in which Martin claimed Brown violated federal securities laws, the Racketeer Influenced and Corrupt Organizations Act (“RICO”),[3] and engaged in state common law fraud and breach of contract by selling or offering to sell interests in numerous gas well properties.
On December 30, 1992, the district court issued an order disposing of several of Martin’s discovery motions. The order included a provision granting Martin permission to inspect certain real property Brown owned. This part stated, “[t]he defendants shall make arrangements with plaintiff for inspection [of the real property] on or before February 1,1993.” App. at 106. The real estate covered included Brown’s personal residence and a laundromat he owned. Bender refused to permit inspection of the real property because she believed it was irrelevant to any liability Brown might have to Martin or any damages he might owe after the RICO claim had been dismissed.
On January 22, 1993, Martin’s counsel sent a telex to Bender informing her of Martin’s continuing insistence on inspecting these properties. Bender responded the next day by denying the request for inspection and reiterating her contention that inspections of the real property had no relevance to any of Martin’s surviving claims. Then, in February 1993, Bender sent a letter to Martin’s attorney asking him to clarify or justify the inspection of these properties.
In March 1993, Bender filed ten in limine motions. They were unrelated to the discovery dispute. She also filed a motion to dismiss the federal security claim arguing that the interests in gas wells Martin claimed Brown fraudulently offered for sale were not securities as defined by federal law. Alternatively, Bender moved to certify this issue for immediate appeal believing an interlocutory determination could expeditiously dispose of Martin’s only remaining federal claim. See 28 U.S.C.A. § 1292(b) (West 1993). This was the third time Brown had raised the lack-of-a-security question.[4] One of the ten in limine motions Bender had filed was yet a fourth attempt to relitigate the security issue. In another of Bender’s ten in limine motions, she also raised for the second time the statute of limitations as a defense.[5]
On March 31, 1993, with the dispute over inspection of Brown’s real estate unresolved, Martin filed a Rule 37 motion to sanction Brown for her refusal to comply with the December 30, 1992 order. In April 1993, Bender filed a response and Martin thereafter filed a reply. In an order entered April 30, 1993, the district court decided to keep Martin’s Rule 37 motion for sanctions under advisement, “subject to the parties’ and at *1256 torneys’ compliance with discovery directives set forth” in the memorandum supporting its order. App. at 593. The memorandum criticized both parties for their conduct in discovery, warned them that sanctions would be imposed for future noncompliance "with the letter or spirit of the discovery rules and cautioned them about the use of “unnecessary verbiage,” “superfluous language” and the filing of unwarranted motions and excessively long papers. App. at 587.
Also on April 30, 1993, the district court denied Bender’s motion to dismiss on the security issue and refused to certify it for interlocutory appeal. Concurrently, it also rejected Bender’s in limine motion concerning the security issue, reasoning that it was “in part a disguised motion to relitigate the ‘securities’ issue,” App. at 588, and once more denied the statute of limitations issue as repetitive, but again without prejudice to Brown’s right to raise it at trial. The court warned, however: “Counsel is instructed not to make any further attempts to relitigate this issue prior to trial on the merits.” App. at 589.
After the April 30, 1993 order, counsel on each side seemed to have made an effort to resolve the outstanding discovery issues. Sometime around July 1993, Martin’s original counsel, Thomas E. Rodgers (“Rodgers”), was hospitalized. Thereafter Martin was represented by a lawyer named David H. Cullis (“Cullis”). Bender contends that Cul-lis’s unfamiliarity with her discussions with Rodgers revived the inspection problem.[6]
In January 1994, the district court dismissed without prejudice Bender’s remaining in limine motions and Martin’s motion for sanctions. With the resurfacing of the dispute concerning inspection of Brown’s real estate, the district court once more directed the parties to negotiate outstanding matters and to resubmit formal motions, on or before April 1, 1994, for judicial resolution of any pre-trial matters then in dispute. The district court instructed counsel to append to any such motions a certification that they had tried, in good faith, to resolve their dispute.
On March 16, 1994, Bender sent a letter directly to the judge presiding over the case. In it, she enclosed all ten of the in limine motions she had presented in March 1993, including for the fifth time the securities issue and, also, the statute of limitations defense that the district court, in its April 30, 1993 order, explicitly directed her not to resubmit until trial. Martin also refiled several of his motions, including the Rule 37 motion for sanctions for Brown’s failure to afford inspection of his real estate.
On April 8,1994, the district court entered another order. It again directed the parties to meet in an effort to resolve Martin’s outstanding discovery requests and Brown’s ten in limine motions. The court also noted that Bender had failed to file with the clerk the motions forwarded with her March 16, 1994 letter. The order scheduled an April 15, 1994 hearing for unresolved matters. In its April 8, 1994 order, the district court echoed its warning to the parties and their counsel that sanctions could be imposed for conduct that “is in violation of the Rules of Civil Procedure and/or the Rules of Professional Conduct.” App. at 647.
Bender did not appear personally at the April 15 hearing. She had yet to refile her in limine motions with the clerk of the district court, but Brown’s local counsel was present and tried to argue their merits. The district court questioned him pointedly about Bender’s persistent refiling of motions denied without prejudice pending trial, as well as her refusal to permit inspection of all the real estate included in the court’s December 30, 1992 order. It ordered Bender, on or before April 20, 1994, to file with the clerk the motions that she previously mailed to the judge with her March 16, 1994 letter before it would consider them. On April 20, 1994, *1257 Bender again filed all ten in limine motions.[7] On that day the district court entered its initial April 20, 1994 order imposing sanctions on Bender and Brown and, on April 25, revised the April 20 order by adding the docket numbers of the in limine motions.
Bender appeals from those portions of both orders sanctioning her for “willful and flagrant” disregard of the court’s orders by “resurrecting and advocating defendants’ motions in limine regarding ‘lack of a security5 and the ‘statute of limitations defense’”; App. at 654-55, and “for refusal to permit meaningful inspection of real property in compliance with [the] court’s orders.... ” Id. at 652-53. For her persistence in raising questions the district court had decided, or indicated it wished to defer to trial, the court ordered Bender to pay $500 personally. For prohibiting Martin from inspecting certain properties, the court ordered Bender and Brown each to pay $500 and, jointly and severally, any costs Martin had incurred in attempting to arrange an inspection.
III. Jurisdiction
The district court had subject matter jurisdiction over the underlying dispute between Martin and Brown under 15 U.S.C.A. § 78a et seq. (West Supp.1995) and 28 U.S.C.A. §§ 1341 and 1343 (West 1993). Bender contends that the district court’s orders of April 20 and 25, 1994 are “final decisions” over which we have appellate jurisdiction under 28 U.S.C.A. § 1291 (West 1993). Although no appellee is present to refute her contention,[8] we have a threshold obligation to consider our appellate jurisdiction. See, e.g., Hoots v. Commonwealth of Pa., 639 F.2d 972, 978 (3d Cir.1981).
A. Strict Finality
Our appellate jurisdiction is generally limited to the review of final decisions of the district courts. United States v. Bertoli 994 F.2d 1002, 1010 (3d Cir.1993); see also 28 U.S.C.A. § 1291.[9] Section 1291 states: “The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.” 28 U.S.C.A. § 1291. “A final decision is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, ministerially, the execution of the decree.” Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc., 998 F.2d 145, 150 (3d Cir.1993) (internal brackets, quotation, emphasis and citations omitted).
The district court’s order dismissing the litigation underlying Bender’s sanctions states:
IT IS ORDERED the action is dismissed without prejudice and the Clerk shall mark the case closed. The Court retains complete jurisdiction to vaeate this Order and to reopen the action upon cause shown that the stay has been lifted or further litigation is necessary.
App. at 664. In Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir.1976) (per curiam), we held that “[generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the defi- *1258 eieney may be corrected by the plaintiff without affecting the cause of action.” In that case, and in subsequent cases, we recognized that exceptions exist, e.g., when the party “cannot amend or declares his intention to stand on his complaint.” Id. at 952. The dispositive inquiry is whether the district court’s order finally resolved the case. See, e.g., Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1461 & n. 6 (3d Cir.1994); Newark Branch, N.A.A.C.P. v. Harrison, N.J., 907 F.2d 1408, 1416-17 (3d Cir.1990).
In Trent v. Dial Medical of Florida, Inc., 33 F.3d 217 (3d Cir.1994), we addressed the effect on our appellate jurisdiction of a district court’s stay and dismissal pursuant to Colorado River abstention.[10] We stated that “[e]ven dismissals without prejudice have been held to be final and appealable if they end the suit so far as the District Court was concerned, although ... such dismissals may not constitute final orders until the party seeking relief renounces any intention to reinstate litigation.” Id. at 220 (internal quotation, citation and brackets omitted). In reliance on Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), we held that the inquiry was whether the purpose and effect of the stay order was to surrender jurisdiction of the federal suit to a state court. Id. at 221 (quoting Moses H. Cone, 460 U.S. at 10 n. 11, 103 S.Ct. at 933 n. 11).
Bender argues similarly that the district court’s dismissal effectively ended this case. Her client, Brown, is in bankruptcy and she no longer represents him. While Martin may assert his claims against Brown in the bankruptcy court, he is precluded from recommencing them in the district court while the bankruptcy is pending. Martin will also be foreclosed from subsequently asserting his claims unless the bankruptcy court denies Brown a discharge. Accepting Bender’s argument, however, would require us to hold that the invocation of the bankruptcy code’s automatic stay would always result in a final disposition triggering appellate review. That result would be inconsistent with the rationale behind the automatic stay provision. See, e.g., Raymark Industries v. Lai, 973 F.2d 1125, 1130 (3d Cir.1992) (automatic stay provides “a breathing spell for the debt- or which stops all collection efforts”) (internal quote omitted). Furthermore, in Bhatla v. U.S. Capital Corp., 990 F.2d 780, 786 (3d Cir.1993), we held that a dismissal without prejudice based on the defendants’ bankruptcy filing was not final because the parties were “free to seek relief from the automatic stay and pursue their claims against those defendants,” and because the case had “the potential to lead to piecemeal appeals.” Although this case is dormant, if not dead, with regard to Martin’s claims against Brown, our analysis under section 1291’s strict finality rule requires us to look at the entire case, including Bender’s conduct in allegedly not complying with the district court’s orders. Thus, we are unable to say the district court’s dismissal without prejudice has finally determined the entire case and, therefore, we conclude that our jurisdiction must be based on the collateral order doctrine.
B. The Collateral Order Doctrine
The collateral order doctrine, as first annunciated in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), relaxes the strict standard of finality by permitting us to entertain appeals from certain orders that would not otherwise be appealable final decisions. See Johnson v. Jones, — U.S. —, —, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995) (“[I]n [Cohen], this Court held that certain so-called collateral orders amount to ‘final decisions,’ immediately appealable under ... 28 U.S.C. § 1291, even though the district court may have entered those orders before (perhaps long before) the ease has ended.”); Bertoli, 994 F.2d at 1010 (“The flexibility given by Cohen ... permits appeal of some district court orders that do not terminate the entire case, or even a discrete part of it.”). The collateral order doctrine recognizes that the benefits achieved by the final decision rule can sometimes be outweighed *1259 by other concerns. Johnson, — U.S. at —, 115 S.Ct. at 2154 (“sometimes interlocutory appellate review has important countervailing benefits”). The case law on the collateral order doctrine is extensive and its requirements clear. It permits appellate review of orders that: (1) finally resolve a disputed question; (2) raise an important issue distinct from the merits of the case; and (3) are effectively unreviewable on appeal from a final judgment. See, e.g., Digital Equipment Corp. v. Desktop Direct, Inc., — U.S. —, —, 114 S.Ct. 1992, 1995-96, 128 L.Ed.2d 842 (1994); Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A., 947 F.2d 49, 54 (3d Cir.1991). In Praxis Properties, we described these three requirements as: (1) the “conclusiveness” prong; (2) the “importance/separateness” prong; and (3) the “unreviewability” prong. Praxis Properties, 947 F.2d at 54-58. Failure to meet any one prong precludes a finding of appellate jurisdiction. Bertoli, 994 F.2d at 1012.
1. The “Conclusiveness” Prong
“The requirement that the district court’s order ‘conclusively determine’ the question means that appellate review is likely needed to avoid that harm.” Johnson, — U.S. at-, 115 S.Ct. at 2155. An order “is conclusive when no further consideration is contemplated by the district court.” Bertoli, 994 F.2d at 1011 (citations omitted). The conclusiveness prong excludes from review “ ‘any decision which is tentative, informal or incomplete.’” Swint v. Chambers County Com’n, — U.S. —, —, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995) (quoting Cohen, 337 U.S. at 546, 69 S.Ct. at 1225, and citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).
In Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 537 (3d Cir.1985), we addressed the applicability of the collateral order doctrine to appeals of attorney sanctions. We concluded that there could be “no dispute” that the conclusiveness prong was satisfied because “[t]he sanctions order challenged ... finally and conclusively determines the sanctions issue.” Eavenson, 775 F.2d at 538. Similarly, in Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, 658 F.2d 944 (3d Cir.1981), although we ultimately found the Rule 37 sanctions there involved were not immediately appealable, we noted that the sanction order conclusively determined the disputed question of sanctions and thus satisfied the first element. Eastern Maico, 658 F.2d at 947; see also Lawrence R. Kemm, Note, Interlocutory Appeals of Attorney Sanctions: In Search of a Standard, 25 Ind.L.Rev. 919, 923 (1991) (“[Tjhere has been little discussion or disagreement that a sanction order represents a ‘conclusive determination.’ ”) (collecting cases).
We have no trouble concluding on the record before us that the district court’s orders sanctioning Bender were its final word on her liability for professional misconduct. There is no indication that the court intended to revisit the issue and two of the sanctions were ordered to be paid by April 29, 1994. Although Bender’s liability has been conclusively determined, there remains a question with regard to the amount of Bender’s liability on the sanction imposed for the expenses caused by her failure to comply with the court’s discovery order because that sanction has not yet been quantified. The court order stated that “defendant Brown and attorney Bender, jointly and severally, are DIRECTED TO PAY to the Clerk of Court the reasonable travel expenses and standard hourly fees incurred by plaintiffs for the services of Mr. John Welsch, MAI, to the extent he was unable to inspect defendants’ properties, within 14 days of the filing by plaintiffs of a verified statement itemizing said expenses and fees.” App. at 653. Martin never filed a verified statement with the district court. Thus, the amount of this sanction remains unquantified.
Generally, an order is not final until it is reduced to a determinate amount. Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080, 1089 (3d Cir.1988); see also Apex Fountain Sales, Inc. v. Kleinfeld, 21 F.3d 931, 934-35 (3d Cir.1994); United States v. Sleight, 808 F.2d 1012, 1015 (3d Cir.1987); Becton Dickinson & Co. v. District 65, United Auto., Aerospace and Agric. Implement *1260 Workers of Am., AFL-CIO, 799 F.2d 57, 61-62 (3d Cir.1986). The need for quantification arises from “concerns with duplicative expenditure of judicial time and resources.” Sleight, 808 F.2d at 1015. It is not without exceptions, however. See, e.g., In re Seidman, 37 F.3d 911 (3d Cir.1994). One exception applies to orders in which the amount, when determined, is insignificant in the overall context of the dispute and itself unlikely to be the subject of a later appeal. Thus, we recently stated in Apex:
[W]e have continued to recognize that an order is final even if it does not reduce the damages to a sum certain if “the order sufficiently disposes of the factual and legal issues and [if] any unresolved issues are sufficiently ‘ministerial’ that there would be no likelihood of further appeal.”
Apex, 27 F.3d at 936 (quoting Polychrome Int’l Corp. v. Krigger, 5 F.3d 1522, 1544 n. 52 (3d Cir.1993)) (second alteration in original).
In this case, the sole discovery expense Martin incurred was the cost of retaining a single real estate appraiser to inspect the property. The determination of this amount is likely to be straightforward and mechanical, and it is also unlikely to result in a later appeal. Furthermore, Bender insists her concern is not the money, but her professional reputation. In Simmerman v. Corino, 21 F.3d 58, 64 (3d Cir.1994), we recognized that the impact of attorney sanctions goes beyond the dollar amount and acts “as a symbolic statement about the quality and integrity of an attorney’s work — a statement which may have tangible effect upon the attorney’s career.” In the overall context of this case, the dollar amounts of the sanctions imposed and the potential liability for the unquantified sanction are insignificant in comparison to their stigmatic effect. Furthermore, there is nothing in the record to explain Martin’s delay in filing the statement and it now appears highly unlikely that it will ever be filed. Though the record leaves much to be desired, the district court’s order limited Martin to recovery of whatever amount is due from, or paid by Martin to Welsch for the time Welseh lost on a day on which he showed up to inspect Brown’s real estate and was not able to do so. See App. at 249-255. Because the only thing missing is an invoice from the appraiser covering this limited lost time, we believe quantification is essentially a ministerial or “mathematical” calculation that can be based on Welsch’s bill for this time. Thus, this case is distinguishable from those in which we have refused to entertain appeals from unquantified orders holding attorneys liable for reasonable attorney’s fees over the course of a particular dispute. See In re Jeannette Corp., 832 F.2d 43, 45 (3d Cir.1987). We conclude that the district court’s orders conclusively determine the sanctions question.
2. The “Importance/Separateness” Prong
Turning to whether the matter is separate from the merits of the action, it has been said that this prong “means that review now is less likely to force the appellate court to consider approximately the same (or a very similar) matter more than once, and also seems less likely to delay trial court proceedings (for, if the matter is truly collateral, those proceedings might continue while the appeal is pending).” Johnson, — U.S. at —, 115 S.Ct. at 2155. This requirement of separateness “derives from the principle that there should not be piecemeal review of steps toward final judgment in which they will merge.” Praxis Properties, 947 F.2d at 56-57 (internal quotation marks omitted). Attorney sanctions, especially discovery sanctions, are, however, often too intertwined with the merits of the underlying litigation to permit immediate review under the collateral order doctrine. See Eavenson, 775 F.2d at 538 n. 6; Eastern Maico, 658 F.2d at 947.
Thus, in Eastern Maico, we stated that “sanctions for violation of discovery orders are usually considered interlocutory and not immediately appealable.” Eastern Maico, 658 F.2d at 947 (citations omitted). In applying the separateness prong, we concluded, “[i]n order to address the question whether the documents requested by plaintiffs were truly relevant, we would have to consider the charges against the defendants and reach some conclusion as to the relative importance of the discovered material.” Id. Thus, we held that “the discovery activity at issue here *1261 is not completely collateral to the underlying action.” Id.
The circumstances of Eastern Maico, however, differ significantly from those before us in Bender’s case. In Eastern Maico, the party challenging the sanction issue agreed that the sanction order could not “be adequately understood without examination of the entire discovery history in the case,” which “would inevitably enmesh us in questions of relevance which could not be decided without reference to the underlying dispute.” Id. at 951. In contrast, in Bender’s ease we can review the district court’s alleged failure to comply with the mandates of procedural due process. This review will not “enmesh” us in the merits of the underlying litigation.
Here, as in Eavenson, there is little danger that our review will cause delay. Brown is in bankruptcy, Martin’s case against him has been dismissed and Bender does not represent Brown in the bankruptcy. To the best of our knowledge, the underlying litigation continues in the bankruptcy court. Thus, Bender’s sanction is “collateral to and separate from the merits not only because the principal case cannot be affected by the outcome of the sanction appeal, but also because the sanction appeal cannot be affected by the outcome of the principal case.” Lawrence R. Kemm, supra, 25 Ind.L.Rev. at 924. Thus, we conclude that the sanctions imposed against Bender are separate from the underlying merits within the meaning of Cohen.[11]
This prong, however, contains two sub-parts. The claim on appeal must be one that is “too important to be denied review.” Cohen, 337 U.S. at 546, 69 S.Ct. at 1226. Therefore, we must also consider whether the issue Bender poses is important. This question is sometimes merged in discussion with the third prong of the Cohen doctrine because the adequacy of subsequent review affects the importance of the question. See Digital Equipment, - U.S. at -, 114 S.Ct. at 2001 (applying the importance requirement as part of the third prong, but noting that other cases have properly applied it to the second prong, citing Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. at 2457; Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 498, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989)). Whether importance is reviewed as part of the second or the third prong, however, it “simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement.” Id. As noted above, the imposition of attorney sanctions may impose significant burdens on the reputation and career opportunities of the sanctioned attorney. We believe such potential harm, absent compliance with the constitutional protections of due process, coupled with the lack of later opportunity for effective appellate review, is sufficient to meet the importance requirement of the collateral order doctrine. See Digital Equipment, — U.S. at —, 114 S.Ct. at 2002 (“Where statutory and constitutional rights are concerned, irretrievable loss can hardly be trivial....”) (internal quotations and brackets omitted).
3. The “Unreviewability” Prong
On the unreviewability prong of the Cohen requirements, we consider whether the district court’s orders will be “effectively unreviewable” if we do not review them now. Bertoli, 994 F.2d at 1012. To meet this requirement, “an order must be such that review postponed will, in effect, be review denied.” Id. (internal quotation marks and ellipses omitted). For purposes of the collateral order doctrine, unreviewability “means that failure to review immediately may well cause significant harm.” Johnson, -U.S. at -, 115 S.Ct. at 2155 (citing 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3911, pp. 334-35 (1992)).
In Eastern Maico, we concluded that we lacked appellate jurisdiction under the collateral doctrine, in part, because the attorney was unable to satisfy the third requirement. We held that the orders would *1262 “be fully reviewable on appeal from final judgment: the parties to the order will still be before the court, and retain the same interest in challenging the order as they have today.” Eastern Maico, 658 F.2d. at 947. As Bender is no longer involved in the underlying case, Eastern Maico is not analogous. In this regard, Bender is in a situation more similar to the attorney sanctioned in Eaven-son. There, we stated:
Because appellant [ ] is no longer connected with the merits of the case, he has an immediate interest in challenging the sanction which is not shared by the parties to the suit or by counsel to a party.
Eavenson, 775 F.2d at 538-39. Bender, like the attorney in Eavenson and again unlike the attorney in Eastern Maico, is no longer a participant in the proceedings. Therefore, Bender is unlikely to have an adequate and effective opportunity for review if we do not consider her appeal of the sanctions imposed on her now.
In sum, we hold that the sanction orders against Bender “conclusively determine the disputed question,” “resolve an important issue completely separate from the merits of the action,” and are “effectively unreviewable on appeal from a final judgment.” See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276, 108 S.Ct. 1138, 1136, 99 L.Ed.2d 296 (1988) (citations omitted). Thus, we have appellate jurisdiction under the collateral order doctrine’s flexible concept of finality. Accordingly, we will now turn to the merits of Bender’s appeal.
IV. Standard of Review
We review orders imposing sanctions for abuse of discretion. See, Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991); Arab African Int’l Bank v. Epstein, 10 F.3d 168, 171 (3d Cir.1993). When the procedure the district court uses in imposing sanctions raises due process issues of fair notice and the right to be heard, however, our review is plenary. See Fabulous Assoc., Inc. v. Pennsylvania Public Utility Commission, 896 F.2d 780, 783 (3d Cir.1990) (constitutional issues subject to plenary review); Snow Machines, Inc. v. Hedco, Inc., 838 F.2d 718, 725 (3d Cir.1988); see also Gillette Foods, Inc. v. Bayernwald-Fruchteverwertung, GmbH, 977 F.2d 809, 812 (3d Cir.1992) (applying plenary review to legal issues that arise in a sanctions context).
V. Discussion
A.
Bender contends that the district court denied her notice and an opportunity to be heard when it sanctioned her for failure to comply with discovery. The Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on a litigant or attorney.[12] Eash v. Riggins Trucking, Inc., 757 F.2d 557, 570-71 (3d Cir.1985) (in banc); Landon v. Hunt, 938 F.2d 450, 454 (3d Cir.1991) (per curiam).
No precise all encompassing rule captures the requirements of procedural due process. The process that is due varies with the nature of particular disputes, and evaluation of its requirements should balance fairly the competing interests of the sanctioned person against the judicial system’s need for efficient judicial administration. See Corino, 27 F.3d at 64 (“The precise form of procedural protection required will, of course, vary with the circumstances of the case.”); Eash, 757 F.2d at 570 (“The form which those procedural protections must take is determined by an evaluation of all the circumstances and an accommodation of competing interests.”). Nevertheless, the fundamental requirements of due process — notice and an opportunity to respond — must be afforded before any sanction is imposed. See Eash, 757 F.2d at 570 (citation omitted); Jones v. Pittsburgh National Corp., 899 F.2d 1350, 1357 (3d Cir.1990) (citing Eash, 757 F.2d at 570-71). With regard to sanctions, partieu- *1263 larized notice of the grounds for the sanction under consideration is generally required. See, e.g., Carino, 27 F.3d at 64; Jones, 899 F.2d at 1357.[13]
Bender’s due process argument has two prongs. She argues that the district court failed to give her sufficient prior notice of the possibility of sanctions and also failed to relate specifically her conduct to the various theories it used to justify the sanctions. She contends that the court required her to defend her actions under every weapon the judicial arsenal has available for imposing sanctions on an attorney.
Bender’s argument that the district court wholly failed to provide her notice is somewhat overstated. In its memorandum, the district court stated that the sanctions it imposed on Bender for failure to afford discovery were imposed under Rule 37.[14] Martin’s motion requesting Rule 37 sanctions for noneompliance with the court’s discovery order obviously referred to Rule 37. It was served on Bender and she filed a response. The district court also provided her sufficient opportunity to be heard. It held a hearing before deciding the issues Martin’s Rule 37 motion raised. Bender’s election to rely on local counsel to state her position because of her own prior commitment is immaterial. Although Martin’s motion only requested dismissal or preclusion of evidence, Bender had fair notice and an adequate opportunity to respond to Martin’s request for Rule 37 sanctions before their imposition. See Corino, 27 F.3d at 64.
Bender’s argument, however, that the district court’s order imposing the sanctions was overly broad, is more troubling. Rule 37 cannot justify the $500 sanction the district court imposed on Bender for her refusal to allow discovery.[15] Absent contempt, the only monetary sanctions Rule 37 authorizes are “reasonable expenses” resulting from the failure to comply with discovery. Fed.R.Civ.P. 37 (1995); cf. Newton v. A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir.1990).[16] The district court failed to explain the basis for the sanction amount. Although the imposition of the related discovery costs are allowable under Rule 37, imposition of the unauthorized fine leaves the court’s justification for these sanctions ambiguous and thus requires us to look elsewhere in the court’s opinion to determine the grounds for both these discovery sanctions and the refiling sanction. The only other reference to the grounds for sanctions is made in the district court’s introduction. There, the dis- *1264 triet court states without elaboration that it imposed sanctions under Rule 11, Rule 37, 28 U.S.C.A. § 1927 and its inherent powers.[17]
This scatter-gun approach is unfair to Bender. It also makes our task of deciding whether the district court acted consistently with a sound exercise of discretion impossible on the record now before us. Jones, 899 F.2d at 1358; accord Foster v. Mydas Associates, Inc., 943 F.2d 139, 141-42 (1st Cir.1991); United States v. Int’l Brotherhood of Teamsters, 948 F.2d 1338, 1346 (2d Cir.1991). In Jones, supra, we addressed a similar problem and held:
Because the district court did not differentiate between Rule 11 and [section 1927] in imposing sanctions, we are not in a position even to know whether the district court applied the correct standard insofar as Rule 11 is concerned. In consequence, the entire order imposing sanctions on appellant must be vacated.
899 F.2d at 1358. The district court’s failure to relate its general grounds to Bender’s conduct (and her conduct alone) requires us to vacate its order sanctioning her and to remand this ease for further proceedings in which the district court will have an opportunity to elaborate on Bender’s conduct, as well as her state of mind, and identify the legal basis for each sanction imposed against Bender.
B.
Though we will not decide any of the other issues Bender raises, we think it may be appropriate to comment briefly on some issues that are likely to come up on the remand. Rule 11 authorizes imposition of sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose, e.g., “to harass or to cause unnecessary delay or needless increase in the cost of litigation.” See Landon, 938 F.2d at 452. Rule 11 sanctions are based on “ ‘an objective standard of reasonableness under the circumstances.’ ” Id. at 453 n. 3 (quoting Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir.1988)). Bad faith is not required. Id.; Jones, 899 F.2d at 1358. Rule 11(c)(1) provides that sanctions can be initiated either by motion or on the court’s initiative. When acting on its own initiative, however, the district court should first enter an order describing the specific conduct that it believes will warrant sanctions and direct the person it seeks to sanction to show cause why particular sanctions should not be imposed. See Rule 11(c)(1)(B); see also Rule 11(c)(3) (“When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.”). If the district court wishes to sanction Bender under Rule 11, it should issue and serve on her an order to show cause and, after considering any response she may file, explain its rationale and describe the specific conduct that supports the particular Rule 11 sanction imposed.[18]
Likewise, if the court desires to base any sanction on section 1927,[19] it should refer to that statute in the order to show cause and relate specific conduct to its violation. We note, however, that section 1927, unlike Rule 11, requires bad faith. Gaiardo v. Ethyl Corp., 835 F.2d 479, 484 (3d Cir.1987). In *1265 addition, section 1927, like Rule 87, authorizes only the imposition of costs and expenses that result from the particular misconduct the court sanctions. Eash, 757 F.2d at 560. Section 1927 also limits these costs and expenses to those that could be taxed to a losing party under 28 U.S.C.A. § 1920 (West 1994). Id.
Usually, the inherent power that a district court retains to sanction attorneys also requires bad faith. Gillette Foods, 977 F.2d at 813 (“[A] court may assess attorney’s fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.”) (internal quotations omitted); London, 938 F.2d at 454 (“[A] prerequisite for the exercise of the district court’s inherent power to sanction is a finding of bad faith conduct.”); but see Republic of Philippines v. Westinghouse Electric Corp., 43 F.3d 65, 74 n. 11 (3d Cir.1994) (sanctions imposed under the court’s inherent authority do not always require a showing of bad faith).[20] We have previously suggested care in the use of inherent powers to impose sanctions. See Fellheimer, Eichen, Braverman, 57 F.3d at 1224 (“ ‘Because of their very potency,’ ... the federal courts must be careful to exercise their inherent powers ‘with restraint and discretion.’”) (quoting Chambers, 501 U.S. at 44, 111 S.Ct. at 2132); Republic of Philippines, 43 F.3d at 74. Generally, a court’s inherent power should be reserved for those eases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists. See Gillette Foods, 977 F.2d at 813.
In summary, if the district court on remand wishes to pursue sanctions against Bender, it should do more than state generally the various grounds authorizing them. It should relate each sanction to some aspect of Bender’s conduct and explain how that conduct comes within the authority it relies on to impose it. Any sanctions imposed against Bender should also be imposed solely because of her own improper conduct without considering the conduct of the parties or any other attorney.
VI. Conclusion
For the reasons stated above, we will vacate the district court’s orders of April 20 and April 25, 1994 insofar as they impose sanctions on Bender for refusing discovery and for refiling motions addressing issues already decided. The case will be remanded to the district court for further proceedings consistent with this opinion. Bender shall bear her own costs.

. Bender represented all three defendants. For the sake of simplicity, however, we will refer solely to Brown.

. The orders Bender appeals are dated April 20 and April 25, 1994. They impose the same sanctions. The April 20 order, however, did not include the docket numbers of ten in limine motions. See Martin v. Brown, 758 F.Supp. 313, 317 n. 1 (W.D.Pa.1994).

. The district court dismissed the RICO count on October 23, 1990, before Bender’s association with the case.

. The issue was first decided in October 1990 and then again in December 1992, both times without prejudice.

. The issue was also first decided in October 1990.

. Bender argues that a number of problems in this case resulted from the entry of new counsel. The record, however, suggests that Cullis may have had some previous relationship to the case or to prior counsel. The record shows the following: Rodgers’s letterhead indicates that he was a sole practitioner. Cullis practiced in a firm named Rodgers and Cullis, P.C. Rodgers and Cullis, P.C.’s letterhead lists two partners: Patricia A. Rodgers and Cullis. Rodgers and Rodgers & Cullis, P.C. have the same address, phone and facsimile number listed on their respective letterheads. Furthermore, Cullis responded to correspondence sent to Rodgers before his illness forced him out of the case.

. Bender claims that she only filed these ten in limine motions because the district court ordered her to do so. Thus, she contends that any sanctions imposed upon her are unfair. We need not decide this issue because of our resolution of this case on procedural grounds. We note, however, that when the district court directed Bender to file with the clerk the ten in limine motions she had enclosed in her March 16, 1994 letter to the judge, it only ordered Bender to comply with its rules of procedure.

. Appeals of attorney sanctions often present this procedural problem because there is no appellee. See Snow Machines, Inc. v. Hedco, Inc., 838 F.2d 718, 725 (3d Cir.1988). Thus, "[w]e must play not only our accustomed and proper role of neutral adjudicator, but also (albeit temporarily) the role of adversary to the appellant in order to test the assertions made on appeal." Id. at 726. In limited situations, we have appointed amici to achieve the benefits of the adversarial system. See Eash v. Riggins Trucking, Inc., 757 F.2d 557, 559 n. 1 (3d Cir.1985). We believe that action is unnecessary in this case.

.Although section 1292 authorizes appeals of certain specified non-final orders, none are applicable here. 28 U.S.C.A. § 1292 (West 1993 & Supp.1994).

. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

. Our finding of separateness is dependent on the facts presently before us. As in Eavenson, "[w]e do not now adopt a rule that would allow immediate appellate review of any sanction order imposed upon counsel, whether counsel has withdrawn from the case or not." Eavenson, 775 F.2d at 539 (emphasis in original).

. Because we conclude that the district court failed to afford Bender procedural due process, we believe it is unnecessary and inappropriate for us to decide on this record her contention that she engaged in no sanctionable misconduct. We believe the district court must first address these matters on remand, after Bender is afforded the procedural safeguards required by the Due Process Clause.

. Recently, we upheld the imposition of sanctions under the bankruptcy court’s inherent sanction power without requiring this type of "particularized notice.” Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215 (3d Cir.1995). In that case, however, the sanctioned attorney was plainly on notice that he was facing sanctions for conduct involving subjective bad faith.

. In this respect, the district court said:
1. Plaintiff's Revised Motion for Sanctions Pursuant to Rule 37 (Document No. 434) is GRANTED IN PART AND DENIED IN PART, as follows: ... c) plaintiff's request to sanction defendants and/or their counsel for refusal to permit meaningful inspection of real property in compliance with this court's orders of December 30, 1992 and January 25, 1993, is GRANTED, and defendant Harold E. Brown and attorney Rebecca E. Bender are DIRECTED TO PAY to the Clerk of [the] Court the sum of $500.00 EACH for their willful refusal to comply with the court's orders; [and they are both jointly and severally liable for the resulting costs to the plaintiff].
App. at 651-53.

. Although Rule 37 authorizes both punitive and compensatory damages, it requires the amount of any monetary damages to be specifically related to expenses incurred by the violations. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 763-64, 100 S.Ct. 2455, 2462-63, 65 L.Ed.2d 488 (1980); Hamilton v. Ford Motor Co., 636 F.2d 745, 747 (D.C.Cir.1980) ("The principal purpose of Rule 37(b) is punitive, not compensatory.”). But see Media Duplication Services, Ltd. v. HDG Software, 928 F.2d 1228, 1241-1242 (1st Cir.1991). The sanctions in Newton v. A.C. & S., Inc., 918 F.2d 1121 (3d Cir.1990), and Media Duplication were imposed under Rule 16(f), not Rule 37(b)(2). The latter is directed to a party or its agents. Rule 16(f) refers expressly to “a party or [its] attorney."

. Rule 37(b)(2) states in part:
the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
Fed.R.Civ.P. 37 (1995).

. We reproduce the full text of the relevant portion of April 20 and April 25 orders:
Penalties will now be imposed for the continued shenanigans of the parties and their counsel, who have been repeatedly warned that the court would take such action under the authority of the Federal Rules of Civil Procedure, especially F.R.C.P. Rules 11 and 37, 28 U.S.C. § 1927, and its inherent power to correct abuses of the judicial process.
App. at 651.

. Rule 11 also has specific notice requirements echoing the Due Process Clause of the Fifth Amendment. See Corino, 27 F.3d at 64 ("The party sought to be sanctioned is entitled to particularized notice including, at a minimum, 1) the fact that Rule 11 sanctions are under consideration, 2) the reasons why sanctions are under consideration, and 3) the form of sanctions under consideration. ”).

.Section 1927 states:
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys’ fees reasonably incurred because of such conduct.
28 U.S.C.A. § 1927.

. Bender correctly points out that the district court never used the term bad faith in its order and suggests that there is no evidence that could support a finding of bad faith. The district court on remand will be in a position to determine, in the first instance, whether Bender acted in bad faith.